STATE v. L. M. SANDLIN.

(Filed 4 October, 1911.)

1. Murder — Special Venire — Regular Jurors — Interpretation of Statutes.

Chapter 343, Laws 1909, providing a term of court for New Hanover County, provides that jurors drawn for the term "shall be regular jurors and subject only to the challenges now allowed by law to regular jurors." Hence, when the regular panel for the first week had been exhausted and a case for a capital felony was reached on Saturday and continued to Monday of the following week, it was not required that a special venire should have been drawn under Revisal, secs. 1973, 1974, and objections to the regular panel is without merit.

2. Murder—Defenses—Insanity—"Not Guilty"—Double Issues—Waiver—Inherent Prejudice.

The prisoner was permitted to amend his plea upon trial for murder and set up insanity as a defense, and without objection a double issue as to defendant's insanity and guilt were submitted to the jury: *Held*, (1) the prisoner waived his right by not excepting at the time; (2) the submission of the double issue was not inherently prejudicial, and did not constitute reversible error.

3. **Appeal and Error—Error in Transcript—Certiorari—Ex Mero Motu—Correction.**

In this appeal by the prisoner from verdict and judgment of murder in the first degree, his counsel objected to the judgment, as the record sent up disclosed a verdict of "guilty of the felony and murder in manner and form as charged in the bill of indictment." *Ex mero motu* the Supreme Court sent down an instanter *certiorari*, to which the clerk returned that the entry on the docket showed that the jury returned their verdict in writing as follows: "2. Is the defendant guilty of the felony and murder of which he stands charged? Answer: Guilty of murder in the first degree." The clerks of the Superior Courts are cautioned that they send up transcripts that are "true, full, and perfect," and *Held*, no error in the judgment rendered below in this case.

APPEAL from *Cline, J.,* at July Term, 1911, of NEW HANOVER.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General T. W. Bickett and Assistant Attorney-General G. L. Jones for the State.*
*L. Clayton Grant for defendant.*

CLARK, C. J. The prisoner was convicted of murder in the first degree in killing his wife. The evidence is that the wife had left her husband after a quarrel and moved to another house, where she kept boarders. On the day of the homicide the prisoner went to his wife's house. After some conversation, he commenced beating his wife. She screamed and ran from the dining-room into the parlor. The defendant followed, beating her. She ran from the parlor into the hall, and the prisoner still followed her. When she got into the hall the prisoner pulled out his pistol and shot her three times, twice in the back and once in the neck. The doctor testified that either shot would have killed her. She fell, and the prisoner stepped over the body and out onto the porch and shot himself in the head, but not seriously. One Moss, who occupied an adjoining room, said to him: "Throw that pistol down." He threw it down on the porch and Moss picked it up. The prisoner then said: "I killed her, and I intended to kill her."

The coroner, who was also a physician, testified as to the pistol shots, and on cross-examination testified that he did not consider the prisoner at all insane. The prisoner offered no testimony, asked for no special instructions, and took no exceptions to the charge.

The prisoner in his brief relies upon the second assignment of error. The trial began on Saturday of the first week of the term. The regular panel of that week was exhausted. When the court met again on Monday, the regular jurors who had been drawn for service during the second week, by virtue of a special act for New Hanover, chapter 342, Laws 1909, were called. The first juror who was tendered was challenged on the ground that this act did not apply to capital cases, but that a special venire should have been drawn under Revisal, 1973, 1974. The act in question provides that jurors so drawn "shall be regular jurors and subject only to the challenges now allowed by law to regular jurors." This also disposes of the assignments of error 3, 4, 6, and 7, which were because the judge held that such jurors were regular jurors and not subject to challenge as talesmen.

The other assignments of error which were not abandoned need not be mentioned, except the 15th, which was because insanity at the trial being insisted on, the judge at the instance of the prisoner allowed his plea to be amended to allege it, and thereupon submitted to the jury the double issue as to the prisoner's insanity at the trial and as to his guilt. The double issue was submitted without exception at the time, and was therefore waived unless it was inherently prejudicial. In *S. v. Haywood,* 94 N. C., 847, the Court, while not approving such practice, held that it was not error in law, stating that this practice had been pursued in other trials, citing *Rex v. Little,* Russ and R., 430; *Regina v. Southey,* 4 Foster and Fin., 864; Buswell on Insanity, sec. 461.

We do not see how any prejudice could have arisen to the prisoner on this occasion. Insanity at the time of the homicide could of course be set up as a defense on the other issue as to the prisoner's guilt.

The record as sent up recited that the jury returned a verdict, "Guilty of the felony and murder in manner and form as charged in the bill of indictment." The brief of the prisoner objected to a judgment on such verdict as his last assignment of error. The Court *ex mero motu* sent down an *instanter certiorari* (*S. v. Randall,* 87 N. C., 571; *S. v. Craton,* 28 N. C., 164), to which the clerk returned that the entry on the docket showed that the jury returned their verdict in writing as follows:

"1. Is the defendant now insane? Answer: No.

"2. Is the defendant guilty of the felony and murder of which he stands charged? Answer: Guilty of murder in the first degree."

As the judge filed as a part of the record his formal judgment, in which he recited that the jury "rendered the verdict as appears of record, finding the said L. M. Sandlin guilty of murder in the first degree," it is not easy to understand how so material an error in the transcript could have occurred. This being an appeal *in forma pauperis,* it is possible that the transcript may have been copied by another, and the very careful and painstaking clerk must have been inadvertent to the omission of the exact form of the verdict as rendered. It is the duty of the clerk to certify that the transcript is "a true, full, and perfect transcript of the record," and too much care cannot be taken by clerks to verify the correctness of the transcript in all cases, both civil and criminal.

The homicide in any phase of the evidence, if believed by the jury, was murder in the first degree, and one of peculiar atrocity. If there are extenuating circumstances they do not appear in this record. There could hardly be any extenuating circumstances, if the evidence sent up is a true statement of the occurrence.