EMERY L. MILLER AND CHARLIE MILLER v. S. P. WOOD, TRADING AS WOOD GROCERY COMPANY.

(Filed 14 October, 1936.)

**1. Automobiles E b—Evidence held for jury on issue of whether employee was acting within scope of employment at time of accident.**

Plaintiffs' evidence tended to show that defendant's employee, who was driving his own car at the time of the accident in suit, was employed as mechanical superintendent of defendant's six cotton gins, located at different places, that the employee frequently used his own car in getting from one gin to another and in transporting machinery parts in the performance of his duties, and that other employees also used his car when none of the defendant's trucks were available, and that defendant was present on occasions when the employee's car was thus used in furtherance of defendant's business, that the employee would take gasoline from defendant's pump before going to a distant gin, and that on the occasion in question the employee was driving his own car, had gotten some parts from one gin to take to another, and at the time of the accident, which occurred during regular working hours, had the parts in his car. *Held:* The evidence was sufficient to be submitted to the jury on the issue of whether the employee was authorized to use his own car in the performance of his duties, and at the particular time in question was acting within the scope of his employment and in furtherance of his master's business.

**2. Appeal and Error E b—**

Where the charge of the lower court is not in the record, it will be presumed that the court correctly charged the law applicable to the facts in the case.

**3. Trial D a—**

On motion to nonsuit, the evidence which tends to sustain plaintiff's cause of action is to be taken in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

APPEAL by defendant from *Sinclair, J.,* at June Term, 1936, of HARNETT. No error.

This is an action for actionable negligence, brought by plaintiffs against the defendant to recover damages for a collision between the plaintiff Emery L. Miller and one Emmit Neighbors, alleged by plaintiffs to be a servant of defendant and acting in the scope of his employment and about his master's business, when he was injured in consequence of the collision, on 20 September, 1935, about 6 o'clock in the afternoon. Charlie Miller owned the automobile which Emery L. Miller was driving at the time of the collision. The defendant denied negligence, set up the plea of contributory negligence, and denied that Emmit

Neighbors was acting in the scope of his employment and about his master's business, when the collision took place.

*The facts:* Emmit Neighbors at the time of the trial was dead. Prior to the collision Neighbors had worked at the plant of defendant in Benson for more than five years. He lived about three miles from the plant. In connection with the Wood Grocery Company, he used his individual car and the defendant's trucks. Sometimes when the trucks were not busy he would use them, if they were busy he used his own car. His working hours were from 7 a.m. to 7 p.m., and during ginning seasons he worked overtime. His duties took him to other plants of Wood Grocery Company. The collision took place on 20 September, 1935, about 6:15 to 6:30 o'clock in the evening. The collision took place on the streets in Benson and at the intersection of the street that turns as one goes into the property of the defendant, where Neighbors was working, the office of defendant being about 60 feet away. On the occasion he was driving his automobile for the Wood Grocery Company. The collision occurred immediately opposite the mill, during working hours. Neighbors was superintendent of the mechanical line, a machinist, fixing the machinery, parts of the gins and mills, and having it done, this included all of the mills of the Wood Grocery Company, numbering six, located at different places.

W. H. Brown testified, in part: "I was at Wood Grocery Company's plant at the time of the wreck. Mr. Neighbors had been doing some work in the mill, and we had to get up some parts to send them to Princeton to Mr. Wood's gin there. Mr. Phail is foreman. Mr. Neighbors was directing me. We were to get some iron bolts and seven-tooth sprocket. We had all of it except the sprocket and Mr. Neighbors had been looking for that, and I helped him. We could not find it at the plant. . . . Mr. Wood had a gin at Peacock's Crossroad that was not running. Mr. Neighbors went down there to get the sprocket; he left in the afternoon. I did not see him again until after the wreck. . . . Mr. Neighbors was up there at the gin and he asked me if I would wait around, and I went to the Neighbors car and got the 7-tooth sprocket and three little set-screws that he got at Peacock's Crossroad. . . . Mr. Neighbors took the sprocket to Princeton to Mr. Phail. I know this is the sprocket that came from Peacock's Crossroad because I have been down there and saw right where it came from. Mr. Neighbors left the plant to go to Peacock's Crossroad to get the sprocket. I don't recall any time Mr. Wood was present when Neighbors used his own automobile, but know a time or two Mr. Wood came to the plant when Mr. Neighbors was gone with it. The hands would use Mr. Neighbors' car when we did not have anything else to drive. . . . I have made trips in Mr. Neighbors' car in which he carried tools and ap-

pliances. The last trip we took was to carry a fan shaft and other materials to Pine Bottom gin, and put it on the gin. The distance from Benson to Spivens Corner is about 25 miles, to Pine Bottom and Graydon Johnson's, about 12 miles each, and the Crossroads about 6 miles. . . . Some of the time all other conveyances would be out and we would get a call to go to some other plant and Mr. Neighbors would say, 'Get the tools and let's go.' And we would take the tools and go on Mr. Neighbors' car. I have known this to happen when Mr. Burgess was there. . . . Just about everybody down there that drove a car used Mr. Neighbors' car at times, during the time I was there. Sometimes to go up town and get parts in that car. I have seen the bookkeeper use it."

Nelson Stuart testified, in part: "Mr. Neighbors would go on his own car to the gin and up town for parts; sometimes to the gin in Selma, and sometimes to a gin in Sampson County. Most of the time he would go on his own car and sometimes he went on the company truck. Mr. Burgess was present on some of these occasions. Mr. S. P. Wood would come to the plant every evening during the week days in the fall. I don't know whether Mr. Wood knew he was using his own car in connection with Wood's business, but he was present where he could see him doing it. I do not know of any order that was given before the wreck about employees driving their individual cars in connection with Mr. Wood's business. I didn't have any such order. I have seen Neighbors get gasoline from the company pump when he would go to a gin some distance away. The company has a gasoline tank on the premises."

Robert Jernigan testified, in part: "Mr. Burgess was superintendent of the Wood Grocery Company at the time Emery L. Miller was injured and had been for a number of years. Emmit Neighbors was a mechanic working for Wood Grocery Company. He had the power to hire and discharge employees, and did do so. W. H. Brown was employed by the Wood Grocery Company as a mechanic at the time Miller was injured. Mr. Neighbors would give Brown instructions as what to do. I was working at the cotton gin at the time. I knew of one occasion when Neighbors went on his car to the gin below Dunn and got a saw file for the Wood Grocery Company, and have known him to go up town and get parts to work around the gin. I know of no occasion when he went off and did any work and used his car. In connection with his mechanical duties, his work required him to visit other plants and mills of Mr. Wood. Q. While you were there, did Mr. Neighbors turn his car over to you to go after anything; materials or things for the Wood Grocery Company? Ans.: Yes, sir. Mr. Wood was present at the mill at that time. This was at least a year before the wreck. Mr. Neighbors

kept his car on the mill yard most of the time, where it could be seen by other employees. On the occasion when Mr. Wood was at the mill, I went to Princeton on the car for a distributor belt for the gin. Mr. Wood was where he could see me using the car."

There was other evidence introduced by plaintiffs to like effect. The defendant denied that Neighbors was authorized to drive his own car in the business of defendant, and a rule was verbally promulgated that none of defendant's employees should do so.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was Emmit Neighbors, at the time referred to in the complaint, operating his automobile as the employee of the defendant and within the scope of his authority as such employee? Ans.: 'Yes.'

"2. Was the plaintiff Emery L. Miller injured by the negligence of the defendant, as is alleged in the complaint? Ans.: 'Yes.'

"3. If so, did the said Emery L. Miller, by his own negligence, contribute to his injury, as is alleged in the answer? Ans.: 'No.'

"4. Was the plaintiff Charlie Miller's automobile damaged by the negligence of the defendant, as alleged in the complaint? Ans.: 'Yes.'

"5. What damage, if any, is the plaintiff Emery L. Miller entitled to recover of the defendant? Ans.: '$550.00.'

"6. What damage, if any, is the plaintiff Charlie Miller entitled to recover of the defendant as damages to his automobile, as alleged in the complaint? Ans.: '$50.00.' "

Judgment for plaintiffs was rendered on the verdict by the court below. At the close of plaintiffs' evidence and at the close of all the evidence the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below denied these motions. Defendant excepted, assigned error, and appealed to the Supreme Court.

*Claude C. Canaday and Larry F. Wood for plaintiffs.*
*L. L. Levinson for defendant.*

CLARKSON, J. The record discloses that "Witness then describes how collision occurred, indicating that Neighbors was negligent in the operation of his car. No point could be made by including all this testimony, for the reason that defendant is basing his appeal on account of the failure of the presiding judge to grant his motion for judgment of nonsuit upon plaintiffs' failure to show defendant to be master of Neighbors at the time of the injury."

It is admitted on the record, and in defendant's brief, that "The sole question presented by this appeal is whether there was sufficient evidence

to take the case to the jury that the employee was acting within the scope of his employment at the time and in respect to the very transaction out of which the injury arose." The defendant contends that there was not sufficient evidence, but we cannot sustain his contentions. We think there was sufficient evidence, if not direct, at least circumstantial, to be submitted to the jury, that Emmit Neighbors was a servant of defendant and acting in the scope of his employment and about his master's business when the collision took place which injured the plaintiff, Emery L. Miller and the car belonging to Charlie Miller, which he was driving at the time.

The evidence succinctly tends to show that Neighbors was superintendent of the mechanical line, in the employ of defendant—fixing the machinery in all of the mills of defendant (some 6 in all), located at different places. That he had a car which he used in carrying out defendant's business; that defendant Wood saw, or in the exercise of due care could have seen, him using it at different times for the defendant company. His duties took him to other plants of the Wood Grocery Company, and on the occasion when the collision occurred he was using his car during working hours. (1) He had to get parts to send to defendant's gin at Princeton—iron bolts and seven-tooth sprocket. He went to Peacock's Crossroad to a gin of defendant which was not running, and got the sprocket and some set-screws, and they were in the car when the collision occurred, the sprocket was afterwards taken to the Princeton gin. (2) The hands would use Neighbors' car when they did not have anything else to drive, and trips were made in Neighbors' car when he carried tools and appliances. (3) The Neighbors' car was used by everyone at times to go up town and get parts, and the bookkeepers used it. (4) Neighbors would use it to go up town for parts, sometimes to the gin in Selma and Sampson County. (5) Neighbors would get gasoline from the company pump on the premises when he would go to a gin some distance away. (6) He turned his car over to an employee to go for materials or things for the Wood Grocery Company. There was other evidence to like effect.

The charge of the learned judge in the court below is omitted from the record, and the presumption of law is that he charged correctly the law applicable to the facts in the case.

On motion to nonsuit, the evidence which tends to make for plaintiff is to be taken in the light most favorable to him, and he is entitled to the benefit of every reasonable intendment thereon and every reasonable inference to be drawn therefrom.

On the facts above stated, the court below, in a charge free from error, submitted the following issue to the jury: "Was Emmit Neighbors, at the time referred to in the complaint, operating his automobile as the

employee of the defendant and within the scope of his authority as such employee?" The jury answered "Yes." The evidence was plenary to be submitted to the jury.

In *Dickerson v. Refining Co.,* 201 N. C., 90 (97), quoting from Tiffany on Agency, p. 270, it is said: "A servant is acting in the course of his employment when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment, if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility; but, if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct."

In *Robertson v. Power Co.,* 204 N. C., 359 (360), citing numerous authorities, is the following: "The modern tendency is to give the rule a liberal and practicable application, especially where the business of the master, entrusted to his servants, involves a duty owed by him to the public or to third persons." *Jones v. Trust Co.,* 206 N. C., 214; *Lertz v. Hughes Bros., Inc.,* 208 N. C., 490; *West v. Baking Co.,* 208 N. C., 526.

In the judgment below we find

No error.