## STATE v. CLAUDE SULLIVAN.

(Filed 29 September, 1948.)

**1. Criminal Law § 17g—**

G. S., 122-83, and G. S., 122-84, prescribe no procedure by which the question of whether an accused is mentally incapable of understanding the nature of the proceedings against him and to make a rational defense may be brought to the attention of the court, or the manner in which such inquiry shall be conducted, and therefore the procedure in each instance is controlled by the common law.

**2. Common Law—**

So much of the common law as had not been abrogated or repealed by statute is in full force and effect within this State.  G. S., 4-1.

**3. Criminal Law § 17g—**

Whether the circumstances call for an inquiry as to the mental capacity of defendant to plead to the indictment and conduct a rational defense is for the determination of the trial court in the exercise of its discretion, and the question may be raised either before or during the trial upon suggestion of counsel or the court may act *ex mero motu* upon its own observation.

**4. Same—**

The manner and form of an inquiry to determine whether a person accused of crime has the mental capacity to plead to the indictment and prepare a rational defense is for the determination of the trial court in

STATE *v.* SULLIVAN.

the exercise of its discretion, and the court may submit an issue as to the present mental capacity of defendant and the issue of his guilt, or innocence of the offense charged at the same time.

**5. Same—**

Where the court submits an issue of defendant's present mental capacity at the same time it submits issues arising upon the trial, and the charge of the court is not in the record, it will be assumed that the court properly charged that if the jury should find on the first issue that defendant is mentally deranged, the jury should not answer the other issues.

**6. Criminal Law § 81b—**

Where the judge's charge does not appear of record, it will be presumed that the court correctly instructed the jury on every principle of law applicable to the facts in evidence.

BARNHILL, J., dissents.

APPEAL by defendant from *Sink, J.,* at June Term, 1948, of BUNCOMBE.

Criminal prosecution upon a bill of indictment containing three counts charging that defendant on 6 March, 1948, with force and arms, unlawfully, willfully and feloniously (1) did break and enter a storehouse, shop, and building, dwelling, occupied by and in possession of Fritschy's Auto Service and James G. Fritschy, where merchandise, chattels, moneys and other valuable securities and personal property were being kept, with intent to commit a felony, to wit: the crime of larceny therein, etc., (2) did take, steal and carry away the following personal property: "one office safe containing $3,100 and other personal property owned by and in the possession of Fritschy's Auto Service and James G. Fritschy of the value of $3,500"; and (3) did receive and have said property, etc., "well knowing the said property to have been theretofore feloniously stolen, taken and carried away,"—all contrary to the form of the statutes in such cases made and provided by law, etc.

When the case was called for trial in Superior Court, upon inquiry by the court as to the plea of defendant, counsel for defendant stated to the court that he desired to enter a plea of incapacity to plead to the bill of indictment, and, at the same time, submitted the following as the proper and only issue at this time: "Is the defendant, Claude Sullivan, sane and capable of conducting his defense in this indictment?"

Thereupon, the court announced to counsel for defendant that it would submit the issue tendered and would also submit an issue to the same jury as to the guilt or innocence of defendant upon the charges in the bill of indictment, and thereupon directed that a plea of not guilty on the charge of guilt or innocence be entered for defendant. To this ruling of the court defendant, through his counsel and in apt time, objected and excepted. Exception.

The State offered testimony bearing upon the issues as indicated above, and (1) as each witness came to testify, counsel for defendant objected to the introduction of any testimony on question of the guilt or innocence of defendant, and (2) at the close of the testimony of each witness, in respect to the guilt or innocence of defendant, moved to strike out all evidence relating thereto, and each time duly excepted.   Exceptions.

While the charge of the court is not shown in the record and case on appeal, these issues were submitted to and answered by the jury as here shown:

1. Is the defendant at this time mentally incompetent to plead to the bill of indictment and to properly prepare his defense, as alleged by the defendant?

2. Was the defendant mentally incompetent to know right from wrong on the 6th day of March, 1948, as alleged by the defendant?

3. Is the defendant guilty, as charged in the bill of indictment?

The jury answered the first issue "No," the second issue "No," and the third issue "Yes."

Motion of defendant to set aside the verdict was overruled, to which exception was duly taken.

Judgment was entered: (1) Upon the charge of breaking and entering, imprisonment at hard labor in State's Prison at Raleigh for not less than 5 nor more than 10 years; (2) on the charge of larceny that prayer for judgment be continued for 10 years on specified condition; and (3) on charge of receiving stolen goods, knowing them to be stolen, that judgment be suspended.   Defendant excepted and appeals to the Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Don C. Young for defendant, appellant.*

WINBORNE, J.   The assignments of error on this appeal, as stated in brief of counsel for defendant, the appellant, bring into question only the ruling of the trial court in submitting the issue as to the then present mental disorder of defendant and the issue as to his guilt or innocence to the same jury and at the same time.

In this connection, considering pertinent statutes of this State, P. L. 1899, Chapter 1, now G. S., 122-83 and G. S., 122-84, as amended by Laws 1945, Chapter 952, Sections 53 and 54, applicable rules of the common law and decided cases of this Court, *S. v. Harris,* 53 N. C., 136; *S. v. Vann,* 84 N. C., 722; *S. v. Haywood,* 94 N. C., 847; *S. v. Khoury,* 149 N. C., 454, 62 S. E., 638; *S. v. Sandlin,* 156 N. C., 624, 72 S. E.,

203; *S. v. Godwin.* 216 N. C., 49, 3 S. E. (2d), 247, the challenge may not be sustained on the facts of this record.

The General Assembly of this State, by statute enacted in the year 1899, Public Laws 1899, Chapter 1, has provided (1) in Section 65, among other things, that "When a person accused of the crime of murder . . . or other crime . . . shall be found by the court to be without sufficient mental capacity to undertake his defense or to receive sentence after conviction, the court before which such proceedings are had shall detain such person in custody until an inquisition shall be had in regard to his mental condition . . .," and (2) in Section 63, among other things, that ". . . all persons who, being charged with crime, are adjudged to be insane at the time of their arraignment, and for that reason cannot be put on trial for the crimes alleged against them, shall be sent by the court before whom they are or may be arraigned for trial, when it shall be ascertained by due course of law, that such person is insane and cannot plead, to the state hospital . . . and they shall be confined therein . . . and . . . treated, etc."

These statutes are now G. S., 122-84 and G. S., 122-83, respectively, as amended by Laws 1945, Chapter 952, Sections 54 and 53, respectively. (And it may be noted in passing, that the 1945 amendment strikes out the word "insane" where it appears and inserts in lieu thereof the words "mentally disordered," and also strikes out the word "insanity" where it appears and inserts in lieu thereof the words "mental disorder.")

Thus it is seen that these statutes, in so far as they relate to a person accused of crime presently insane or mentally disordered, take hold only when such person "shall be found by the court to be without mental capacity to undertake his defense" under one statute, and is "adjudged to be insane at the time of" his "arraignment, etc.," under the other. But the General Assembly has prescribed no procedure by which the question of the present insanity or mental disorder of the person so accused of crime may be brought to the attention of the court, or for the investigation by the court preliminarily to adjudicating the question as to whether accused is so mentally disordered as to be incapable of making a rational defense, that is, whether the accused has capacity to understand the nature and object of the proceedings against him, to comprehend his own conduct in reference to such proceedings, and to make a rational defense,—the test generally adopted to determine whether the person should be put on trial. See Weihofen on "Insanity as a Defense in Criminal Law," 333.

Hence, in the absence of an applicable statute, the investigation of the present insanity or mental disorder to determine whether the accused shall be put on trial, and the form of the investigation ordered, are controlled by the common law. So much of the common law as has not

STATE *v.* SULLIVAN.

been abrogated or repealed by statute is in full force and effect within this State.   G. S., 4-1, formerly C. S., 970.   *Hoke v. Greyhound Corporation,* 226 N. C., 332, 38 S. E. (2d), 105.

And the rule at common law is that an accused cannot be tried while insane, for the obvious reason that his insanity may render him incapable of making a rational defense, and at common law, if at any time while criminal proceedings are pending, the trial court, before or during the trial, either from observation or upon suggestion of counsel, has facts brought to its attention which raise a doubt of the then sanity of the accused, it should, before putting him upon trial or continuing his trial initiate an investigation of such by any method, generally, that seems to it best.   14 Am. Jur., 801, Criminal Law, Section 44.   That is, the method that shall be ordered of determining the present sanity of the accused before the beginning of the trial generally rests in the discretion of the trial judge, with or without the aid of a jury.   He may inquire into the facts himself, or he may impanel a jury for the purpose if he sees fit, or he may submit the question as an issue to the trial jury. See 142 A. L. R., 961—Annotation, subject "Investigation of present sanity to determine whether accused should be put, or continue, on trial," for full treatment of the subject.

Moreover, the subject of present incapacity of one accused of crime to plead to indictment therefor first came to this Court for consideration under the rules of the common law in the case of *S. v. Harris* (1860), 53 N. C., 136.   The headnote there epitomizes the decision of the Court: "Where, upon the arraignment of one for murder, it was suggested that the accused was a deaf-mute, and was incapable of understanding the nature of a trial and its incidents and his rights under it, it was held, proper for a jury to be impaneled to try the truth of these suggestions, and on such jury responding in the affirmative to these suggestions, for the court to decline putting the prisoner on his trial."

The subject was under consideration next in the case of *S. v. Haywood* (1886), 94 N. C., 847.   In this case when defendant was arraigned and called upon to answer the charges of forgery and the uttering of a forged order, counsel appearing in his behalf suggested to the court his present insanity and inability to plead or make defense, and asked that a preliminary inquiry as to his mental condition be made before a jury.   The request was granted, but verdict favorable to him was set aside as being against the weight of the evidence.   Then the trial judge gave notice to his counsel that when the case should be called for trial on a day certain, two issues, one as to the defendant's mental capacity to manage his defense, and the other as to his guilt or innocence, would be submitted to one and the same jury at the same time.   Accordingly, the issues were submitted to the jury, and verdict was against the defendant on both

issues. Judgment was pronounced, and defendant appealed to this Court. And, the Court, *Smith, C. J.,* writing the opinion and finding error in other respects, had this to say: "While we do not mean to decide that there was error in law, which enters into and vitiates the verdict in submitting the double issue, as was done in this case, of present insanity and guilt, to the same jury, for this course has been pursued in other trials, *Rex v. Little,* Russ & R., 430, *Regina v. Southey,* 4 Foster and Fin., 864, cited in Buswell on Insanity, Sec. 461, and these furnish a precedent, it is most obviously fitting and proper that the inquiries should have been separated, and that the defendant's capacity to enter upon a trial, should be determined before he is put upon the trial; for the trial would amount to nothing if the defendant had not the required capacity to defend himself against the charge. The very requirement to answer prejudges the case adversely to the prisoner, and must have an unfavorable influence upon the jury, in passing upon the issue. Besides, the blending of the inquiries by allowing evidence pertinent to one, and incompetent to the other, notwithstanding the caution the judge may give as to its consideration, may tend to confuse the minds of the jury, and to do injustice to the defendant."

On the other hand, since the enactment of the statute of 1899, now G. S., 122-84 and G. S. 122-83, this Court has had the subject under consideration in two cases, *S. v. Khoury* (1908), *supra,* and *S. v. Sandlin* (1911), *supra.* It may be noted, however, that the statute of 1899 is not referred to in either of these cases.

In the *Khoury case,* while it was held that the motion of the defendant to be permitted to withdraw his plea of not guilty, and submit the issue of his insanity at the time of the trial, was a matter resting in the sound discretion of the court, and while the decision turned on that point, the Court, in an opinion by *Connor, J.,* went on to say that "Whether, at the time defendant was put upon his trial, the court should have suspended proceedings and impaneled a jury to ascertain whether he was then insane, is a matter resting in the sound discretion of the court." Then the Court, after referring to the case of *S. v. Haywood, supra,* continued: "While, as suggested by *Smith, C. J.,* it would have been more fitting that the suggestion of present insanity be first tried, he said that to try the question together with the issue of traverse was not error in law which would vitiate the verdict." The Court then quotes with approval this statement of the rule from Buswell on Insanity, Sec. 461: " 'Although, if there be a doubt as to the prisoner's insanity at the time of his arraignment, he is not to be put upon trial until the preliminary question is tried by a jury, the question of the existence of such a doubt seems to be exclusively for the determination of the court; and counsel for the defendant can neither waive an inquiry as to the

question of defendant's sanity, nor compel the court to enter upon such an inquiry when no ground for doubting it appears . . . And the question whether an inquiry is called for by the circumstances of the case, is for the determination of the court, who may also direct the manner in which such inquiry shall be conducted. Error will not lie to review the proceedings upon such an inquiry, whether the allegation of insanity be made before or after the conviction of the prisoner.' "

And in the *Sandlin case,* the prisoner was permitted to amend his plea upon trial for murder and set up insanity as a defense, and without objection a double issue as to defendant's insanity at the trial and as to his guilt were submitted to the jury. *Clark, C. J.,* speaking for the Court, disposes of the appeal by saying: "The double issue was submitted without exception at the time, and was therefore waived unless it was inherently prejudicial." And, continuing, "In *S. v. Haywood,* 94 N. C., 847, the Court while not approving such practice, held that it was not error in law, stating that this practice has been pursued in other trials, citing *Rex v. Little, . . ., Regina v. Southey, . . .,* Buswell on Insanity, Sec. 461"; and concluding, "We do not see how any prejudice could have arisen to the prisoner on this occasion."

Furthermore, in the cases *S. v. Vann, supra,* and *S. v. Godwin, supra,* the suggestion of present insanity of defendants was made after conviction and before judgment. In the *Vann case,* tried in 1880 under the common law, and before the enactment of statute of 1899 to which reference is hereinabove made, the trial court held that the defendant was entitled to a jury to inquire into the fact, and on appeal hereto, this Court concurred in the ruling. But in *S. v. Godwin,* tried in 1938, and after the enactment of the above statute, this Court held that the case of *S. v. Vann* was not controlling; that it fits the common law rule; and that after 1899 the matter was controlled by statute. The Court quotes this pertinent part of the statute: "When a person accused of the crime of murder . . . shall be found by the court to be without sufficient mental capacity . . . to receive the sentence after conviction," and then states that "The statute requires that an inquiry shall be had when a person 'shall be found by the court' to be without sufficient mental capacity, a finding by the court implies a discretion of the trial court."

By the same reasoning, the requirement of the statute that an inquisition shall be had when a person charged with crime "shall be found by the court" to be "without sufficient mental capacity to undertake his defense," implies a discretion in the trial judge as to how he shall make the finding. Yet the statute is silent with respect to the preliminary procedure for finding the facts upon which the court may make the determination.

Hence, in the light of the common law as interpreted and applied by this Court in decided cases, the question of the existence of a doubt as to prisoner's sanity at the time of his arraignment seems to be exclusively for the determination of the court. And whether an inquiry is called for by the circumstances of the case, as well as the manner in which such inquiry shall be conducted, is for the determination of the trial court in the exercise of its discretion.

Furthermore, in the present case the charge of the court not being brought up in the record and case on appeal, it will be assumed that in presenting the issues to the jury the court properly instructed the jury that if the jury in answer to the first issue as to the sanity of defendant should find that he was at the time mentally incompetent to plead to the bill of indictment and to properly prepare his defense, as alleged by him, the jury should not answer the other issues.

When the judge's charge is not shown in the record of case on appeal, it will be presumed that the court correctly instructed the jury on every principle of law applicable to the facts in evidence. *Growers. Exchange, Inc., v. Hartman,* 220 N. C., 30, 16 S. E. (2d), 398; *Cato v. Hospital Care Association,* 220 N. C., 479, 17 S. E. (2d), 671; *Hornthal v. R. R.,* 167 N. C., 627, 82 S. E., 830; *Dry v. Bottling Co.,* 204 N. C., 222, 167 S. E., 801; *Miller v. Wood,* 210 N. C., 520, 187 S. E., 767; *Maynard v. Holder,* 219 N. C., 470, 14 S. E. (2d), 415; *S. v. Wooten and Ward,* 228 N. C., 628, 46 S. E. (2d), 868.

For reasons above stated, error is not made to appear in the trial below. Hence, in the judgment from which appeal is taken, we find

No error.

BARNHILL, J., dissents.