MRS. LYDIA ELLIS v. AMERICAN SERVICE COMPANY, INC., CITIES ICE SERVICE COMPANY, INC.. BURLINGTON ICE DELIVERY COMPANY, INC., AND FRANK HANEY, AN INDIVIDUAL.

(Filed 4 June, 1954.)

1. Automobiles § 24c—

An employer is liable where his employee causes injury by negligent operation of the employee's automobile while in use in the prosecution of his employer's business, when the employer knows, or should know, that the employee is so using it, even though the employer has no right of control over the employee's personal car, nor responsibility for its condition, upkeep or operation.

**2. Same—**

An employee is not engaged in the prosecution of his employer's business while operating his personal car to the place where he is to perform the duties of his employment, nor while leaving his place of employment to go home.

**3. Master and Servant § 24 ½ e—Evidence held insufficient to show that employee was using his personal car in the performance of the duties of his employment at time of accident.**

The evidence tended to show that defendant employee had certain duties to perform in the course of his employment in assisting the loading of ice on employer's trucks and in making platform sales at the plant, and that when this work was completed his duties were to drive one of the delivery trucks himself, that the employer's delivery truck driven by defendant employee was kept at another plant, that the employee, in driving his personal car to work, drove first to the plant where the trucks were loaded, assisted in work there, and then drove his personal car to the other plant where the truck used by him was stored. The accident in suit occurred while the employee was driving from the plant where the ice was sold and truck loaded to the plant where the truck was kept. Employer had notice of this habit of employee, but such use of the employee's personal car was not required, contemplated or necessary in the performance of his duties, and was of no benefit or advantage to employer or for any purpose other than employee's personal preference or convenience. *Held:* The evidence discloses that the employee was not engaged in the prosecution of the employer's business at the time of the accident, and, therefore, the employer's motion to nonsuit was properly allowed.

APPEAL by plaintiff from *Parker, J.,* September Civil Term, 1953, of ALAMANCE.

Civil action for damages for personal injuries inflicted by automobile owned and operated by defendant Haney.

The evidence most favorable to plaintiff tends to establish these facts:

1. Plaintiff's injuries were proximately caused by defendant Haney's negligent operation of his automobile. Liability of corporate defendants, if any, depends upon applicability of the doctrine of *respondeat superior.*

2. American Service Company, Inc., hereinafter called American, is a foreign corporation. Cities Service Company, Inc., hereinafter called Cities, is a North Carolina corporation. Each has an ice plant in Burlington and is engaged solely in the manufacture of ice. The stock ownership of American is not shown. J. M. Freeman is American's manager. W. R. Massey and the J. L. Domany Estate own the stock of Cities. Massey is Cities' manager.

3. Burlington Ice Delivery Company, Inc., hereinafter called Delivery Company, is a separate North Carolina corporation.

4. The Delivery Company owns and operates twelve delivery trucks. American and Cities sell their entire output to the Delivery Company, which in turn sells at retail to consumers from the platforms of the manu-

facturers and from the delivery trucks. The Delivery Company has an office in Burlington. Freeman, the manager of American, is also the manager of the Delivery Company.

5. Haney was employed and paid by the Delivery Company. He was under the orders of Freeman. He was not under Massey's supervision.

6. During the slack season, from 15 October to 15 April, only one plant operated in the manufacture of ice. Each operated every other year. This season, and on 12 March, 1951, the Cities plant alone was manufacturing ice.

7. H. W. Ellis, plaintiff's husband, was in charge of the manufacture of ice at the Cities plant. On 12 March, 1951, upon arrival at the Cities plant, Ellis started the machines, got everything going, and Nathan Garrison, his assistant, "started pulling ice" and "dumping it into the storage room."

8. On the morning of 12 March, 1951, as was his custom, Haney drove his personal car to the Cities plant. (Ellis testified that usually Haney came in his own car but at times came in the Delivery Company's truck.) His work at the Cities plant was to assist in loading trucks of the Delivery Company assigned to the drivers and to make platform sales. When he completed this work, or was relieved by another employee, he would leave the Cities plant in his own car, go to the American plant, where the Delivery Company's trucks, including the one assigned to him, were kept; leave his personal car there; get his truck; drive it to the Cities plant; load it there and then go out on his delivery route.

9. On 12 March, 1951, about 9 a.m., Ellis remarked that he was going to the Alamance Lumber Company to pay a bill. He and Haney had been good friends for years. Haney told him: "If Nathan will look out for the platform in case a customer comes in—we didn't have but a few customers at that time of year—I will go get my truck and you can ride up there and I will pick you up on my way back." The Alamance Lumber Company was on the direct route from the Cities plant to the American plant. Ellis got in Haney's car. Haney was driving along Webb Street towards the Alamance Lumber Company and American's plant when his car struck plaintiff.

10. Haney then lived "out in the county on the Glencoe Road." While Ellis' testimony is not explicit, the purport seems to be that the distance from Haney's home to the American plant and to the Cities plant is about the same. While the time of the inquiry is not clear, Mr. Freeman, who employed Haney, asked him why he did not get his truck in the morning when he came to work and before going to the Cities plant. The record does not reveal Haney's response, if any.

At the close of plaintiff's evidence, all defendants made motions for judgment of involuntary nonsuit. The motion of defendant Haney was

overruled. The motions of all corporate defendants were allowed. Thereupon, plaintiff submitted to judgment of voluntary nonsuit as to defendant Haney and appealed from the court's rulings (albeit no judgment appears in the record) allowing the motions of the corporate defendants.

*P. W. Glidewell, Sr., Carroll & Pickard, and J. A. Webster for plaintiff, appellant.*

*Armistead W. Sapp for American Service Company, Inc., and Burlington Ice Delivery Company, Inc., defendants, appellees.*

*Cooper, Long, Latham & Cooper for Cities Ice Service Company, Inc., defendant, appellee.*

BOBBITT, J. An employer is liable where his employee causes injury by negligent operation of the employee's automobile while in use *in the prosecution of his employer's business,* when the employer knows or should know that the employee is so using it. *Davidson v. Telegraph Co.,* 207 N.C. 790, 178 S.E. 603; *Miller v. Wood,* 210 N.C. 520, 187 S.E. 765; *Pinnix v. Griffin,* 219 N.C. 35, 12 S.E. 2d 667; 5 Am. Jur. p. 728, Automobiles sec. 393; 60 C.J.S. p. 1159, Motor Vehicles sec. 453.

In *Davidson v. Telegraph Co., supra,* a Western Union messenger was using his own automobile to deliver messages for his employer. In *Pinnix v. Griffin, supra,* an insurance agent was engaged in the collection of insurance premiums for his employer. In *Miller v. Wood, supra,* a case cited by appellant as on "all-fours" with this case, the owner-operator of the automobile had supervision of the machinery at each of the defendant's several plants, used his personal car in going from plant to plant in the course of his duties, and on the occasion of plaintiff's injuries was on his way from one plant to another with parts and tools for the purpose of making repairs.

Haney being an employee of the Delivery Company, the test of its liability is whether Haney, while driving his personal car from the Cities plant towards the American plant to get the truck for use in his employer's business, was engaged in the service of and was acting for his employer. *Wilkie v. Stancil,* 196 N.C. 794, 147 S.E. 296; *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d 586.

An employee is not engaged in the prosecution of his employer's business while operating his personal car to the place where he is to perform the duties of his employment, *Wilkie v. Stancil, supra,* nor while leaving his place of employment to go to his home, *Rogers v. Garage,* 236 N.C. 525, 73 S.E. 2d 318. Compare: *Bray v. Weatherly & Co.,* 203 N.C. 160, 165 S.E. 332, and cases cited therein, in which the question was whether the employee sustained an injury "by accident arising out of and in the course of" his employment within the meaning of G.S. 97-2 (f).

It is clear that if Haney were on his way from his home to get the truck, which had to be loaded with ice at the Cities plant before he could set out on his delivery route, and while en route to the American plant had injured plaintiff by the negligent operation of his personal car, the Delivery Company would not be liable. The question then is: should liability be cast on the Delivery Company solely on the basis of the circumstance that Haney, for no reason other than his personal preference and convenience, chose to go directly to the Cities plant and do his separate work there before getting his own truck for the purpose of loading it and making deliveries therefrom along his route? Our answer is, No.

*In limine,* we notice the fact that the Delivery Company had no right of control over Haney's use of his personal car. Under the Massachusetts rule, this alone would absolve the Delivery Company. *Reardon v. Coleman Bros.,* 277 Mass. 319, 178 N.E. 638. Nor did the Delivery Company have any responsibility for its condition, upkeep or operation. But these facts alone are not determinative under our decisions.

Decision here rests upon the ground that no duty of Haney to the Delivery Company contemplated or required that he use his personal car in performance thereof. He was not directed to so use it nor did any necessity exist for its use. Mr. Freeman, his superior, asked Haney why he didn't get his truck first and then go to the Cities plant. The record discloses no answer apart from personal preference 'or habit on the part of Haney, uninfluenced by any benefit or value to his employer. The most that the evidence discloses is that Freeman acquiesced in Haney's use of his personal car in going to the American plant where his truck was kept. Haney's duty was to get the truck (this being his only reason for going to the American plant) and then operate it in his employer's service and for his benefit. The time and mode of transportation to the American plant was up to Haney and a matter of indifference to his employer. Haney chose to use his personal car in his own way in accordance with his personal preference or convenience. It was never used in connection with the sale and delivery of ice or otherwise in the service of his employer.

Cases in other jurisdictions relating to an employer's liability for negligence of an employee while driving his own car are numerous and different results are reached in divergent factual situations: See Annotations: 57 A.L.R. 739; 60 A.L.R. 1163; 112 A.L.R. 920; 140 A.L.R. 1150.

In the absence of evidence: (1) that the Delivery Company had any right of control over Haney's car or responsibility for its condition, upkeep or operation; or (2) that Haney's car was used otherwise than for the one purpose of transporting himself to the American plant to get the truck kept there for his use in the performance of his duties; or (3) that Haney's use of his personal car was required, contemplated or necessary

in the performance of his duties; or (4) that his use of his personal car was of benefit or advantage to his employer or for any purpose other than his personal preference or convenience: we conclude that Haney, while driving his personal car towards the American plant, under the circumstances disclosed by plaintiff's evidence, was not then engaged in the prosecution of the Delivery Company's business. This conclusion renders unnecessary discussion of plaintiff's further contention that the Delivery Company was a mere instrumentality, agency or department of the other corporate defendants and for this reason they too were liable for Haney's negligence.

Accordingly, the rulings of the court below in allowing motions for judgment of involuntary nonsuit as to the corporate defendants are affirmed. A formal judgment, predicated on such rulings, should be entered in the court below.

Affirmed.