STATE of Tennessee, Appellee,

v.

Scott HAUN, Appellant.

Court of Criminal Appeals of Tennessee, Knoxville.

May 30, 1985.

Rom Meares and Cathy H. Morton, Maryville, for appellant.

W.J. Michael Cody, State Atty. Gen. & Reporter, Jane W. Young, Asst. State Atty. Gen., Nashville, David G. Ballard, Dist. Atty. Gen., Steven R. Hawkins, Asst. Dist. Atty. Gen., Maryville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of first degree murder and sentenced to serve life imprisonment.

The defendant says the trial judge should have determined, during trial, whether the defendant was competent to proceed with trial, when evidence of his incompetency to proceed appeared during the trial; says the trial court erroneously excluded the testimony of two physicians concerning the defendant's physical condition at birth and in early life; says the trial court erroneously excluded the testimony of a physician and two lawyers on the issue of incompetency at the time the crime was committed; says he should have been granted a new trial when there was newly discovered evidence on the issue of insanity; says the trial court erred in not permitting him to show the reputation of the deceased for violence; and says the state should have been required to produce, on proper request by the defendant, a recorded pre-trial statement of a witness called by the state.

The judgment is reversed, and the case is remanded for a new trial.

The defendant does not contest the sufficiency of the evidence in this case. The evidence shows that the defendant, age nineteen at the time, in the course of a confrontation of some nature, shot and killed another youth.

Relying on the rule of *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), the defendant based his defense to the charge of murder on a claim of mental incompetency at the time of the shooting.

The trial of this case began on April 11, 1984, and was concluded on April 17, 1984. On the evening of April 15, counsel for the defendant was unable to confer with the defendant at the jail because his client appeared disoriented. The prosecuting attorney also came to the jail and observed the defendant. The trial judge was informed of this situation and had the defendant taken to the local hospital for an examination. The examination at the hospital was primarily a physical examination which did not explore the mental competence of the defendant. Blood and urine samples were taken but test results were not made or reported prior to July 5, 1984, when the post-trial motions were overruled. The tests were conducted by the T.B.I. laboratory at Knoxville, and the results showed the defendant had, at the time the samples were taken, a considerable amount of drugs in his body.[1]

On the morning of April 16, the defendant's counsel were of the opinion he was still unable to communicate with them, and they were informed by officers that the defendant was found in possession of a razor blade. The record shows the defendant had previously indicated he intended to commit suicide.

The trial judge, upon being advised of these circumstances, directed an evaluation to be made of the defendant, during noon recess, at the jail, by physicians from Lakeshore Mental Health Center.

The personnel of the Center made an evaluation of the defendant on April 16, and April 17, 1984. They found the defendant to be suicidal and in need of close observation. The psychiatrist who saw the defendant reported that under ordinary circumstances hospitalization would have been recommended. On April 17, 1984, a further evaluation by the medical personnel

---

1. The medical and test results were not introduced in the original proceedings. However, on remand by this Court these records were made a part of the record on appeal.

found the defendant to have "conflicted, split feelings" and capable of suicide. The reports expressed no opinion of the defendant's ability to understand the proceedings or to consult with his counsel.

These written reports were not furnished to the trial court until after the trial had ended. However, a verbal report was made to the judge concerning the suicidal tendencies of the defendant. The trial judge reported this to the defendant's attorneys and arranged for a college student to be placed in the defendant's cell during the evenings to guard against a suicide attempt.

The defendant contends the trial judge should have conducted a hearing, when these events developed, to determine if the defendant was incompetent to understand the proceedings against him. The state counters this claim by saying the defendant has waived any complaint on this matter by failing to move for such a hearing at the time the situation developed.

■ In most situations, we would agree with the state that the defendant has waived this matter. However, we must examine this particular issue in light of the duty of the trial judge to ensure that an accused has sufficient mental competence at trial to understand the proceedings against him.

In *Cogburn v. State*, our Supreme Court adopted the following rule:

And the rule at common law is that an accused cannot be tried while insane, for the obvious reason that his insanity may render him incapable of making a rational defense, and at common law, if at any time while criminal proceedings are pending, the trial court, before or during the trial, either from observation or upon suggestion of counsel, has facts brought to its attention which raise a doubt of the then sanity of the accused, it should, before putting him upon trial or continuing his trial initiate an investigation of such by any method, generally, that seems to it best.

198 Tenn. 431, 434–435, 281 S.W.2d 38, 39–40 (Tenn.1955) (quoting from *State v. Sullivan*, 229 N.C. 251, 49 S.E.2d 458, 460).

In *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the United States Supreme Court held that the attempted suicide by the defendant after the start of the trial was of sufficient significance to require an investigation into the competency of the accused to stand trial, in order to assure that the defendant was sufficiently competent to understand the nature of the proceedings against him and to advise with counsel.

■ In this case, where the record shows the defendant had a history of previous mental disorders as well as mental disorder at the time of the trial, it was incumbent upon the trial judge to conduct a hearing to determine the competency of the defendant to continue at trial, and such duty was incumbent upon the judge even in the absence of a motion for such hearing.

In his second and third issues the defendant argues the trial judge unduly limited evidence of his mental condition. In part, these issues have merit.

We are of the opinion the trial judge erroneously excluded, on grounds of remoteness, certain testimony of Dr. Agee, Dr. Mayberry, and lay witness Joe Costner.

■ Dr. Agee was the attending physician when the defendant was born and attended him subsequent thereto. The defendant sought to show that he was a premature baby and that premature babies quite often suffer an hypoxic episode, depriving the infant of oxygen and resulting in brain damage.

The record before us is unfortunate because the trial judge sustained the objection of the state to virtually every question put to Dr. Agee before he answered, and there was no proof on this offered for the record. The doctor was allowed to testify that any physical trauma could have psychological effects.

We think the ruling of the court is made more significant by the testimony of a psychiatrist called by the state to establish the

defendant's competency. Out of the presence of the jury, this psychiatrist testified that hypoxic and ischemic episodes can "produce damage to the brain with mental retardation, mental defect."

The medical staff at the state hospital where the defendant was evaluated before trial did not order or cause to be performed a neurological examination to determine if the defendant had any organic brain damage.

■ We are of the further opinion that the court erred in excluding the opinion of Dr. Mayberry, a psychiatrist, on whether the defendant was able to conform his conduct to the requirement of law.

Dr. Mayberry had examined the defendant on two occasions in 1980 and found him to be suffering from mental defects and in need of treatment. At that time Dr. Mayberry was of the opinion that, without treatment, the defendant's mental condition would not improve. The record shows the defendant received no treatment from the time Dr. Mayberry saw him until the crime occurred. When the defendant attempted to show that the defendant was unable to conform his conduct to the requirement of law under the *Graham* rule, the trial court excluded this evidence on the basis of remoteness and stated that the date of the crime, October 13, 1983, was the only relevant date on the issue of insanity.

Although we agree with the trial court that the issue of the defendant's ability to conform his conduct to the requirement of the law was centered on the date of the crime, we do not agree that the evidence of organic brain damage sought to be introduced through Dr. Agee and the mental disorder sought to be introduced through Dr. Mayberry, was not relevant for the jury to consider in determining whether on October 13, 1983, the defendant was able to conform his conduct to the requirements of the law.

There is nothing in this record to show that the defendant had recovered from an organic defect (which if present is a permanent condition) or that his mental condition

had improved from the time Dr. Mayberry saw him in 1980. In fact, Dr. Mayberry's testimony indicated the condition would not have improved.

■ The general rule of whether evidence is relevant is whether the evidence has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Banks*, 564 S.W.2d 947 (Tenn.1978). Although a lapse of time may, of course, affect this tendency, it is the rational connection between events, not the temporal one, that determines whether the evidence has probative value. We think a rational connection was made here.

■ In cases involving an issue of a person's mental condition, the courts generally allow considerable latitude in the introduction of evidence concerning the issue, and generally any evidence which tends to show the accused has, during his lifetime, suffered from mental illness, or from other organic illness or defect which bears upon his mental condition, is relevant and admissible without being excluded on the basis of remoteness. *See Bryant v. Jackson*, 25 Tenn. 199 (1845); 21 Am.Jur.2d *Criminal Law* § 78 (1981).

We also agree that the trial court erroneously disallowed an attorney, whose testimony showed he had ample opportunity over a period of time from 1980 until 1983 to form an opinion as to the mental condition of the defendant, from giving his opinion on whether the defendant was mentally incompetent within the *Graham* rule.

■ The testimony of a lay person is admissible on this issue if the witness shows an adequate opportunity to observe the accused's action and conduct. *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976). The trial judge allowed the witness to testify about his observations of the defendant but ruled that he could not give an opinion because the time of his observation was too remote from the date of the crime. For the reasons stated above, we think this evidence was admissible.

■ We do not find the trial court erroneously excluded the testimony of Dr. Finney, a psychologist, concerning the effect brain injury caused by premature birth could have been upon a person's mental capacity. Dr. Finney, under repeated questioning out of the presence of the jury, testified he was not sufficiently knowledgeable in neurology, pediatrics, or psychiatry to give an opinion on this matter. This being the case, the trial judge properly refused to allow this testimony before the jury.

We have examined the deposition of another attorney and find the court correctly excluded this evidence. The evidence offered was not relevant on the issue of insanity.

In light of our treatment of the issue concerning the need for a hearing during trial on the ability of the defendant to continue at trial, we do not deem it necessary to go into the matter of alleged newly discovered evidence. This evidence is the same evidence which we have found necessitated the hearing during trial. We therefore do not deem it necessary to further discuss this matter.

■ We find no error in the exclusion of testimony about the general reputation of the deceased as a bully. The trial court allowed evidence of acts of violence done by the deceased to the defendant. The defendant insists the general reputation of the deceased for violence was relevant on whether the killing was actuated by malice.

■ Unless the evidence shows the defendant was aware of the general reputation of the deceased for violence, we do not think such evidence is relevant to the defendant's state of mind. *See Williams v. State*, 565 S.W.2d 503 (Tenn.1978).

Finally, we conclude that, as found by the trial judge on a remand by this Court, there was no recorded statement made by a state's witness which was subject to discovery. We therefore find no merit in the defendant's assignment of error on that matter.

WALKER, P.J., and JOHN T. TEMPLETON, Special Judge, concur.