ELYSE C. SCHMOYER, GENERAL GUARDIAN AND NATURAL MOTHER OF ROBERT WESLEY HARMON, JR., MINOR CHILD OF ROBERT WESLEY HARMON, SR., DECEASED, PLAINTIFF-EMPLOYEE v. CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, DEFENDANT-EMPLOYER, AND UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, DEFENDANT-INSURANCE CARRIER

No. 8510IC1390

(Filed 3 June 1986)

**Master and Servant § 62— workers' compensation—employee not on special errand**

A church custodian was not on a special errand for his employer, and his injury and death did not arise out of and in the course of his employment, where deceased was killed in a car accident while traveling to his fiancee's home and then to the church to spend the night because snow was predicted and he had to be at the church the next morning to let someone in.

Schmoyer v. Church of Jesus Christ of Latter Day Saints

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and award entered 10 September 1985. Heard in the Court of Appeals 8 May 1986.

Robert Wesley Harmon was killed in an automobile accident in Greensboro in the late evening of 5 February 1984. This claim for benefits under the Workers' Compensation Act was brought by plaintiff as the natural guardian of Robert Wesley Harmon, Jr., the only child of Robert W. Harmon.

On 5 February 1984, Robert Harmon was employed as a custodian at the Church of Jesus Christ of Latter Day Saints located on Pinetop Road in Greensboro. Harmon worked for hourly wages, his usual hours of employment being from 8:00 a.m. until 4:00 p.m. One of Harmon's duties was to open the church in the morning. On the day he was killed, Harmon worked at the church until about 5:00 p.m., then went to visit his fiancee, Ms. Cynthia Howle, at her residence about three miles from the church. Harmon left Ms. Howle's residence at about 11:00 p.m., intending to spend the night with his parents who lived in Pleasant Garden, a town located between Climax and Greensboro. After Harmon arrived at his parents' home, he received a telephone call from Ms. Howle who told him that she was distraught and upset. Harmon offered to return to her home and console her, saying that afterwards he would probably go to the church and spend the night. While en route to Ms. Howle's residence, Harmon was involved in the accident which caused his death. Other facts will be discussed as necessary in the body of our opinion.

Following a hearing, Deputy Commissioner Rush denied plaintiff's claim for benefits. Upon appeal, the Full Commission adopted and affirmed Commissioner Rush's opinion, Commissioner Clay dissenting. Plaintiff appealed to this Court.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Thomas C. Duncan, for plaintiff-appellant.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Clinton Eudy, Jr., Richard D. Ehrhart and George W. Jarecke, for defendant-appellees.*

WELLS, Judge.

The essence of plaintiff's first argument is that the Commission erred in concluding and holding that Robert Harmon's injury by accident which caused his death did not arise out of and in the course of his employment. Plaintiff contends (1) that at the time of the accident which resulted in his death, Robert Harmon was on a "special errand" for the benefit of his employer and therefore the accident arose out of and was in the course of his employment or (2) that, at least, Harmon was on a "dual purpose" trip for the benefit of his employer and therefore the accident arose out of and was in the course of his employment. We disagree and affirm.

In order for a covered worker's injury to be compensable, it must be shown that the injury was caused by an accident arising out of the worker's employment and occurring in the course of the employment. N.C. Gen. Stat. § 97-2(6) (1985); *Powers v. Lady's Funeral Home*, 306 N.C. 728, 295 S.E. 2d 473 (1982). Whether the injury arose out of and in the course of the worker's employment is a mixed question of law and fact. *Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 293 S.E. 2d 807 (1982); *White v. Battleground Veterinary Hosp.*, 62 N.C. App. 720, 303 S.E. 2d 547, *disc. rev. denied*, 309 N.C. 325, 307 S.E. 2d 170 (1983). The two requirements are separate and distinct and both must be satisfied in order to render an injury compensable. *Barham v. Food World*, 300 N.C. 329, 266 S.E. 2d 676 (1980). The term "arising out of" refers to the origin of the injury or the causal connection of the injury to the employment, while the term "in the course of" refers to the time, place and circumstances under which the injury occurred. *Barham, supra; Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977).

As a general rule, injuries occurring while a covered worker is traveling to and from his place of employment do not arise out of and are not in the course of employment and thus are not compensable. *Powers, supra; Barham, supra*. Equally well recognized as the general to and from rule is the "special errand" exception. *Powers, supra*. This exception provides that the injury is in the course of the employment if it occurs while the employee is engaged in a special duty or special errand for his employer. *Pollock v. Reeves Bros., Inc.*, 313 N.C. 287, 328 S.E. 2d 282 (1985). Plaintiff contends that this claim falls within the "special errand" rule

because of the following evidence. On the afternoon of Sunday, 5 February 1984, before he left the church, plaintiff engaged in a conversation with Ms. Clara Campbell, a non-supervisory volunteer of the church, who usually went to the church on Tuesday mornings. Ms. Campbell told Harmon that she wanted to come in on Monday morning and that she would be there around 8:00 a.m. It was a part of Harmon's duty to open the church on Monday morning. A snowstorm was predicted for Sunday night. Harmon told Ms. Campbell that he would be at the church to let her in on Monday morning and that he would spend the night at the church if it snowed and the weather was bad. Also, when Harmon was at his parents' home on Sunday night, he told them that he was going to spend the night at the church because snow was predicted and he had to be at the church Monday morning to let someone in. The accident in which Harmon was killed was at a place on the usual route from his parents' home to the church. We cannot agree that this evidence, viewed in the light most favorable to plaintiff, was sufficient to establish that Harmon was on a special errand for his employer when he met his death, but at most shows that he may have exercised his discretion to go to the church in advance of the time he was required to be there. In that way, he accomplished no other purpose but to help ensure his timely arrival at his job. We fail to see how such circumstances differ in any meaningful way from the exercise of the judgment of any employee to depart for his work at an earlier time than usual in order to avoid possible late arrival associated with predicted inclement weather. *Compare Powers, supra; Pollock, supra.* In this case, Harmon's employer would have no more benefited by Harmon's late night endeavor to reach the church in time for work than it would have from Harmon's usual enterprise in getting himself to work on time.

As we have decided that Harmon was not on an errand for his employer when his injury occurred, we need not address plaintiff's contention that Harmon's trip to his fiancee's residence may have had a dual purpose, *i.e.*, as both a personal trip and a special errand.

Our disposition of plaintiff's first argument makes it unnecessary for us to reach plaintiff's only remaining argument relating to the nature of the supervision of plaintiff's work at the church.

For the reasons stated, the opinion of the Full Commission is

Affirmed.

Judges ARNOLD and BECTON concur.