LEIGH ANN CHAVIS, EMPLOYEE-PLAINTIFF v. TLC HOME HEALTH CARE, EMPLOYER-
DEFENDANT, AND PHARMACISTS' MUTUAL INSURANCE COMPANY, CARRIER-
DEFENDANT

No. COA04-1454

(Filed 16 August 2005)

**1. Workers' Compensation— home health nursing assistant—
injury while traveling—course of employment**

Under the Workers' Compensation Act, a traveling employee
is in the course of employment once a personal deviation has
been completed and the direct business route has been resumed.
A certified nursing assistant working for a home health care
agency had resumed her direct business route at the time of
her accident where she went to the patient's home, the patient
had to leave for about twenty minutes, plaintiff's employer did
not permit waiting in the patient's home when the patient was not
there but had no written policy on what to do during the wait,
plaintiff ran an errand, and she was injured as she returned to
the patient's home.

**2. Workers' Compensation— home health nursing assistant—
blackout while driving—arising out of employment**

A car accident arose out of a home health nursing assistant's
job, even though her blackout may have been a contributing
cause, because the accident occurred while she was driving in the
course of her employment.

**3. Workers' Compensation— average weekly wage—home
health nurse—mileage included**

Mileage was properly included in the calculation of the
average weekly wage of a nursing assistant who was injured in a
car accident on the way to a patient's house. She was perform-
ing her job duties in driving from one house to another, she
was not paid an hourly wage while driving, and there is com-
petent evidence to support the finding that she was paid mile-
age in lieu of wages.

**4. Workers' Compensation— disability—nursing assistant— capability for sedentary work—lack of skills**

Competent evidence in the record in a workers' compensation hearing supported an Industrial Commission finding that plaintiff was unable to earn the same wages as before her injury, either as a certified nursing assistant or in other employment, although she was capable of sedentary work. Evidence that she had no computer, receptionist, or secretarial skills supported the finding that looking for sedentary work would have been futile.

**5. Workers' Compensation— delayed written notification— employer's actual knowledge**

An employer's actual knowledge of a workers' compensation injury prevented prejudice from any delay in written notification.

**6. Workers' Compensation— evidence excluded—discretion of Commission**

Determining credibility is the responsibility of the full Commission, and the Commission does not have to explain its findings by distinguishing credible witnesses and evidence. Here, there was no error in a workers' compensation case where the Industrial Commission excluded evidence regarding the employer's policies.

Judge TYSON dissenting.

Appeal by Defendants from Opinion and Award entered 1 April 2004 by North Carolina Industrial Commission. Heard in the Court of Appeals 8 June 2005.

*Jones Martin Parris & Tessener Law Offices, PLLC, by J. Michael Riley and Gregory M. Martin, for plaintiff-appellee.*

*Young Moore & Henderson, P.A., by J. Aldean Webster, III, for defendant-appellants.*

WYNN, Judge.

Under the Workers' Compensation Act, a traveling employee is in the course of employment once a personal deviation has been completed and the direct business route has been resumed. *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 529, 477 S.E.2d 678, 679 (1996), *disc. review denied*, 345 N.C. 751, 485 S.E.2d 49 (1997). In this case, Plaintiff-Employee traveled to a patient's home, left on a personal

errand, and was injured in an automobile accident on her return to the patient's home. Because the personal errand was complete and Plaintiff had resumed her business travel route, we hold that the accident occurred in the course of her employment making her injury compensable. Accordingly, we affirm the full Commission's Opinion and Award on this and other issues presented on appeal.

The evidence from the record on appeal tends to show that Plaintiff Leigh Ann Chavis, a certified nursing assistant ("CNA"), worked as a "runner" for Defendant TLC Home Health Care. As a "runner," Ms. Chavis traveled to multiple patients' homes in a single day. TLC Home Health Care reimbursed Ms. Chavis for the mileage she incurred from her home to the first patient's home, to and from each patient's home, and from her last patient's home to her home. TLC Home Health Care paid Ms. Chavis an hourly wage only for the time she spent in-home with the patient and not for the travel time.

On 26 October 2000, Ms. Chavis drove to her first patient's home at 8:00 a.m. to perform three-and-a-half hours of work. However, upon arriving at the home, the patient, Linda Galegos, informed Ms. Chavis that she was leaving to take care of some business at school. Ms. Galegos informed Ms. Chavis that she would be back home in approximately twenty minutes.

TLC Home Health Care had a policy that did not permit Ms. Chavis to wait in a patient's home when the patient was not there. But TLC Home Health Care had no written policy on what Ms. Chavis should have done when a patient told her to wait twenty minutes. Ms. Chavis testified that, on a previous occasion, Barbara Locklear, TLC Home Health Care's scheduling supervisor, informed her to "just go get something to eat or just do something till the time she come (sic) back, but if she's going to be gone more than an hour or two, you have to go to another client." But Ms. Locklear testified that in that situation Ms. Chavis should have called TLC Home Health Care to see if she should be immediately assigned to another patient.

Ms. Chavis told Ms. Galegos that she would meet her back at her home. Ms. Chavis then drove directly to her father's place of employment, dropped off his wallet, and drove directly back to Ms. Galegos's house. While driving back to Ms. Galegos's house, Ms. Chavis blacked out and ran her car off the road into the side of a church, sustaining injuries to her right foot. Ms. Chavis's father contacted Ms. Locklear that day to inform her of the accident.

CHAVIS v. TLC HOME HEALTH CARE

[172 N.C. App. 366 (2005)]

Ms. Chavis came under the care of George Dawson, III, M.D. for the injuries to her right foot. Dr. Dawson applied a soft cast, and Ms. Chavis was unable to walk without crutches for several months. On 10 November 2000, Dr. Dawson recommended that Ms. Chavis be out of work for a four-month period. On 6 April 2001, Dr. Dawson gave her a note to return to working regular duty on 9 April 2001. Before returning to work in April 2001, Ms. Chavis contacted TLC Home Health Care to inquire about sedentary work but was told none was available. Nonetheless, Ms. Chavis's contract was not terminated. Ms. Chavis filed a claim for workers' compensation which TLC Home Health Care denied. The claim came for a hearing before Deputy Commissioner Ronnie E. Rowell, who awarded Ms. Chavis temporary total disability from 26 October 2000 to 9 April 2001 and for an additional 43.2 weeks thereafter. TLC Home Health Care appealed to the full Commission. On 1 April 2004, the full Commission filed an Opinion and Award affirming Deputy Commissioner Rowell's award including all travel expenses. TLC Home Health Care was also ordered to pay all medical expenses and attorney's fees. TLC Home Health Care appeals from this Opinion and Award.

On appeal, TLC Home Health Care argues that the full Commission erred by concluding that (1) Ms. Chavis's injury "arose out of" and "in the course of" her employment; (2) Ms. Chavis's average weekly wage should include what she was paid in milage reimbursement; (3) TLC Home Health Care must provide medical treatment should it become necessary; (4) Ms. Chavis was temporarily and totally disabled from 26 October 2000 to 9 April 2001; (5) Ms. Chavis gave notice of her injury to TLC Home Health Care; and (6) evidence should be excluded. We disagree.

The standard of review for this Court in reviewing an appeal from the full Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The full Commission's findings of fact "are conclusive on appeal when supported by competent evidence," even if there is evidence to support a contrary finding, *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of compe-

tent evidence to support them[.]" *Young v. Hickory Bus. Furniture,* 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). It is not the job of this Court to re-weigh the evidence. *Adams,* 349 N.C. at 681, 509 S.E.2d at 414. Further, all evidence must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Deese,* 352 N.C. at 115, 530 S.E.2d at 553.

**[1]** First, TLC Home Health Care argues that the full Commission erred in concluding that Ms. Chavis's accident arose out of her and in the course of her employment. We disagree.

Under the Workers' Compensation Act, an injury is compensable only if it is the result of an "accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2004). "Whether an injury arose out of and in the course of employment is a mixed question of law and fact, and the Industrial Commission's findings in this regard are conclusive on appeal if supported by competent evidence." *Culpepper v. Fairfield Sapphire Valley,* 93 N.C. App. 242, 247, 377 S.E.2d 777, 780, *aff'd per curium,* 325 N.C. 702, 386 S.E.2d 174 (1989) (citing *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). The employee must establish the "arising out of" and "in the course of" requirements to be entitled to compensation. *Roberts v. Burlington Indus., Inc.,* 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988).

TLC Home Health Care argues that Ms. Chavis was not "in the course" of her employment when the accident occurred because she was on a personal errand. "The words 'in the course of' refer to the time, place, and circumstances under which an accident occurred. The accident must occur during the period and place of employment." *Ross v. Young Supply Co.,* 71 N.C. App. 532, 536-37, 322 S.E.2d 648, 652 (1984). North Carolina adheres to the rule that employees whose work requires travel away from the employer's premises are within the course of their employment continuously during such travel, except when there is a distinct departure for a personal errand. *Creel v. Town of Dover,* 126 N.C. App. 547, 556, 486 S.E.2d 478, 483 (1997); *Cauble,* 124 N.C. App. at 528, 477 S.E.2d at 679.

Ms. Chavis's work required her to continuously travel to and from different patients' homes. Therefore, she was "in the course" of her employment while traveling unless on a personal errand. *Id.*

Indeed, we cannot agree with the dissent's claim that Ms. Chavis does not fit into this "traveling salesman" exception because she had

fixed hours of employment. Ms. Chavis's job duty, "designated runner", required her to work for multiple patients in a day. She did not have a guarantee of a fixed number of patients in a day, and was only paid for the actual in-home time with the patients. Moreover, she did not have fixed work hours, as the number of patients she worked with in a day varied, which varied her hours.

Furthermore, TLC Home Health Care had a policy that did not permit Ms. Chavis to wait at a patient's home when the patient was not there. On a previous occasion, Ms. Locklear informed Ms. Chavis to "just go get something to eat or just do something till the time she come back, but if she's going to be gone more than an hour or two, you have to go to another client." This policy was in effect to prevent claims of theft against TLC Home Health Care employees and to comply with government regulations. By leaving the Galegos home, Ms. Chavis complied with the orders of TLC Home Health Care and furthered her employer's interests. *See Cauble*, 124 N.C. App. at 529, 477 S.E.2d at 680 (employee's death was "in the course of" employment where his travel, which included eating in a restaurant, was to further his employer's business and at the direction of his employer even though his death was caused by his supervisor's negligent driving while returning to a hotel).

"It is well-established that a traveling employee will be compensated under the Workers' Compensation Act 'for injuries received . . . while returning to work after having made a detour for his own personal pleasure.' " *Cauble*, 124 N.C. App. at 529, 477 S.E.2d at 679 (quoting *Chandler v. Nello L. Teer Co.*, 53 N.C. App. 766, 770, 281 S.E.2d 718, 721 (1981), *aff'd*, 305 N.C. 292, 287 S.E.2d 890 (1982)). Once the deviation has been completed and the direct business route has been resumed, the injury is compensable. *Creel*, 126 N.C. App. at 557, 486 S.E.2d at 483 (the plaintiff's injury occurred "in the course" of his employment when on his way to work the plaintiff stopped off for a drink but had resumed his travel to work when the accident occurred); *Martin v. Georgia-Pac. Corp.*, 5 N.C. App. 37, 43-44, 167 S.E.2d 790, 794 (1969) (the plaintiff's death occurred "in the course" of his employment where, although going to see yachts was a personal detour, once he began to proceed to dinner he "had abandoned his personal sight-seeing mission" and was back within the scope of his employment).

As in *Creel* and *Martin*, Ms. Chavis had completed her personal deviation. Ms. Chavis had resumed the direct business route as she was driving on the fastest route to Ms. Galegos's home. Since Ms.

Chavis had resumed her direct business route after completing her personal deviation when the accident occurred, the accident occurred "in the course" of her employment. *Creel*, 126 N.C. App. at 557, 486 S.E.2d at 483.

**[2]** TLC Home Health Care also argues that the accident did not "arise out of" Ms. Chavis's employment because the accident was caused by her idiopathic condition, not her employment. The words "arising out of the employment" refer to the origin or cause of the accidental injury. *Roberts*, 321 N.C. at 354, 364 S.E.2d at 420. "[A] contributing proximate cause of the injury must be a risk inherent or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment." *Culpepper*, 93 N.C. App. at 248, 377 S.E.2d at 781 (emphasis omitted) (citing *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 533). Under this "increased risk" analysis, the "causative danger must be peculiar to the work and not common to the neighborhood." *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 532 (citations omitted). Where a plaintiff's job requires him or her to travel from his or her place of work to various places in the community, the job exposes the plaintiff to the risk of travel. *Warren v. City of Wilmington*, 43 N.C. App. 748, 750, 259 S.E.2d 786, 788 (1979).

In this case, Ms. Chavis's job required her to travel to and from different patients' homes, exposing her to the risk of travel. This increased travel time is an "increased risk" inherent to the employment. *Culpepper*, 93 N.C. App. at 248, 377 S.E.2d at 781.

However, TLC Home Health Care argues that Ms. Chavis's accident was caused by her idiopathic condition, *i.e.*, blackout, and not her increased travel risk. "[W]here the accident and resultant injury arise out of both the idiopathic condition of the workman and hazards incident to the employment, the employer is liable. But not so where the idiopathic condition is the sole cause of the injury." *Vause v. Vause Farm Equip. Co., Inc.*, 233 N.C. 88, 92-93, 63 S.E.2d 173, 176 (1951). The general rule is that

> where an employee falls from a building, scaffold, ladder, or other place of danger where his employment places him, the accident, if it appears to be incident to and a natural result of a particular risk of the work, may be said to arise out of the employment, even though illness or some pre-existing infirmity may have been a contributing cause of the fall.

*Vause*, 233 N.C. at 96, 63 S.E.2d at 179 (citing *Rewis v. N.Y. Life Ins. Co.*, 226 N.C. 325, 38 S.E.2d 97 (1946); *DeVine v. Dave Steel Co.*, 227 N.C. 684, 44 S.E.2d 77 (1947); *Robbins v. Bossong Hosiery Mills, Inc.*, 220 N.C. 246, 17 S.E.2d 20 (1941)).

The full Commission found that "Plaintiff's October 26, 2000 injury arose out of both her idiopathic condition and the hazards incident to her employment with defendant-employer." Ms. Chavis testified that "[t]he only thing I remember was I was fixing to hit the side of the road. I know I was going around a curve, the next thing I know I was hitting the side of the church. That's the only thing I can remember." Ms. Chavis had previously described this incident as having a "blackout." But the accident occurred while Ms. Chavis was driving in the course of her employment. Ms. Chavis's job duties required her constantly to travel in her car, increasing her travel risk. Since Ms. Chavis's work required her to face the increased risk of constant road travel on her job, we hold that the car accident "arose out of" her employment, even though her idiopathic condition may have been a contributing cause. *Vause*, 233 N.C. at 96, 63 S.E.2d at 179.

[3] Next, TLC Home Health Care argues that the full Commission erred in concluding that Ms. Chavis's average weekly wage should include what she was paid in mileage reimbursement. We disagree.

Section 97-2(5) of the North Carolina General Statutes provides in pertinent part that "[w]herever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." N.C. Gen. Stat. § 97-2(5) (2004). On this issue the full Commission found the following finding of fact:

> 25. Plaintiff's average weekly wage cannot be determined based upon the Form 22 wage chart alone, because it does not reflect what plaintiff was paid for mileage. Plaintiff's mileage reimbursement must be included in the calculation of her average weekly wage because she was paid mileage in lieu of wages.

Because we are bound by the findings of the full Commission so long as there is some evidence of record to support them, we must disagree with TLC Home Health Care's argument. *See Morrison*, 304 N.C. at 6, 282 S.E.2d at 463. On all forms submitted to the Industrial Commission, TLC Home Health Care indicated that Ms. Chavis's average weekly wage was "to be determined." TLC Home Health Care submitted Form 22 to the Industrial Commission indicating "N/A" in

response to the question: "Was this employee given free rent, lodging, or board or other allowances made in lieu of wages?" But Ms. Chavis testified that she was paid mileage reimbursement rather than an hourly wage when driving to and from different patients' houses during the work day. Ms. Locklear confirmed this payment arrangement. As Ms. Chavis was performing her job duties while driving from one patient's house to another, but was not paid an hourly wage during this time, there is competent evidence to support the finding that Ms. Chavis was paid mileage in lieu of wages, and the full Commission properly included the mileage in her average weekly wage. *See, e.g., Shah v. Howard Johnson,* 140 N.C. App. 58, 66, 535 S.E.2d 577, 582 (2000), *disc. review denied,* 353 N.C. 381, 547 S.E.2d 17 (2001) (full Commission properly included the value of the plaintiff's hotel room provided to him in lieu of wages).

Next, TLC Home Health Care argues that the full Commission erred in concluding that TLC Home Health Care must provide medical treatment should it become necessary. TLC Home Health Care failed to cite any authority in support of this argument in its brief; therefore, it is deemed abandoned. N.C. R. App. P. 28(b)(6).

**[4]** Next, TLC Home Health Care argues that the full Commission erred in concluding that Ms. Chavis was temporarily and totally disabled from 26 October 2000 to 9 April 2001 because she was capable of performing sedentary work. We disagree.

To receive compensation under section 97-29 of the North Carolina General Statutes, a claimant has the burden of proving the existence of a disability as well as its extent. N.C. Gen. Stat. § 97-29 (2004). Section 97-2(9) of the North Carolina General Statutes defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2004). Thus, the claimant's burden is to show that because of injury his earning capacity is impaired. *Russell v. Lowes Prod. Distribution,* 108 N.C. App. 762, 425 S.E.2d 454 (1993). The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. *Hilliard v. Apex Cabinet Co.,* 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). "Once the burden of disability is met, there is a presumption that disability continues until 'the employee returns to work at wages equal to those he was receiving at the time his injury occurred.'" *Simmons v. Kroger Co.,* 117 N.C. App. 440, 443, 451 S.E.2d 12, 14

(1994) (quoting *Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 181 S.E.2d 588 (1971)). The burden then shifts to the employer to produce evidence that the claimant is employable. *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). The employer must "come forward with evidence to show not only that suitable jobs are available, but also that the [claimant] is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990).

The full Commission found the following pertinent findings of fact on the issue of temporary total disability:

12. Prior to April 9, 2001, plaintiff contacted defendant-employer to request sedentary work. Plaintiff was told there was no light duty work available. Plaintiff's employment with defendant-employer was not terminated, and she returned to work for defendant-employer in April 2001 earning the same wages she was earning at the time of the injury.

13. Plaintiff was on crutches through March 2001. Her prior work experience was limited to jobs which would have required her to work on her feet. She did not look for sedentary work between October 26, 2000 and April 9, 2001, because she was still an employee of defendant-employer. It would have been futile in any event for her to have looked for sedentary work, given her restrictions and her past work experience.

\*\*\*

21. As a result of the injury she sustained on October 26, 2000, plaintiff was unable to earn the same wages she was earning at the time of the injury in the same or any other employment, from October 26, 2000 to April 9, 2001.

There is competent evidence in the record to support the full Commission's findings of fact that Ms. Chavis was unable to earn the same wages she earned prior to her injury, either in the same employment or in other employment. On 10 November 2000, Dr. Dawson recommended that Ms. Chavis be out of work for a four-month period. Also, prior to 9 April 2001, Ms. Chavis contacted TLC Home Health Care to inquire about sedentary work but was told none was available. This supports the full Commissions finding that Ms. Chavis was incapable of earning the same wages in the same employment as a CNA. *See Moore v. Davis Auto Serv.*, 118 N.C. App. 624, 628, 456

S.E.2d 847, 850 (1995) ("[E]vidence of an employer's refusal to allow an employee to return to work because there was no 'light' work available supports a finding that the employee was not capable of earning wages in the same employment." (citation omitted)).

Also, Ms. Chavis testified that she was twenty-seven-years-old, had a high school diploma, CNA certificate, and lobotomy certificate. All of her previous employment had required her to work on her feet. Ms. Chavis had no computer, receptionist, or secretarial skills. This is competent evidence to support the full Commission's finding of fact that "[i]t would have been futile in any event for her to have looked for sedentary work[.]" *See Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986) ("Where, however, an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist."). As there is competent evidence to support the full Commission's findings of fact on the issue of temporary total disability, we find TLC Home Health Care's argument to be without merit.

[5] Next, TLC Home Health Care argues that the full Commission erred in concluding that Ms. Chavis gave notice of her injury to TLC Home Health Care because she filed Form 18 after the thirty-day time period required by section 97-22 of the North Carolina General Statutes. We disagree.

Section 97-22 of the North Carolina General Statutes provides in pertinent part:

no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

N.C. Gen. Stat. § 97-22 (2004). Section 97-22 requires written notice be given by the injured employee to the employer within thirty days. *Pierce v. Autoclave Block Corp.*, 27 N.C. App. 276, 278, 218 S.E.2d 510, 511 (1975).

Here, both parties agree that Ms. Chavis did not give written notice of injury to her employer until she filed Form 18, more than thirty days after the accident. Since Ms. Chavis failed to provide writ-

ten notice within the thirty-day time period, (1) she must provide a reasonable excuse for not giving the written notice, and (2) the employer must fail to show prejudice for the delay. *Id.*

Section 97-22 gives the Industrial Commission the discretion to determine what is or is not a "reasonable excuse." N.C. Gen. Stat. § 97-22 ("[U]nless reasonable excuse is made *to the satisfaction of the Industrial Commission . . .*") (emphasis added). This Court has previously indicated that included on the list of reasonable excuses would be, for example, " 'a belief that one's employer is already cognizant of the accident . . .' or '[w]here the employee does not reasonably know of the nature, seriousness, or probable compensable character of his injury and delays notification only until he reasonably knows . . . .' " *Jones v. Lowe's Cos., Inc.*, 103 N.C. App. 73, 75, 404 S.E.2d 165, 166 (1991) (quoting *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987)); *see Lakey v. U.S. Airways, Inc.*, 155 N.C. App. 169, 173, 573 S.E.2d 703, 706 (2002), *disc. review denied*, 357 N.C. 251, 582 S.E.2d 271 (2003) (reasonable excuse because employer knew of injury where employee was injured on employer's aircraft, employer filed an incident report, and employee saw employer's doctor within the thirty days following the injury); *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 603-04, 532 S.E.2d 207, 214 (2000) (reasonable excuse found because employee did not know nature and character of injury where doctors originally told him he had a heart attack, not a herniated disk). The burden is on the employee to show a "reasonable excuse." *Jones*, 103 N.C. App. at 75, 404 S.E.2d at 166.

The full Commission found the following pertinent finding of fact on the issue of notice:

> 24. Plaintiff's father reported the injury to defendant-employer on the date of injury. Defendant-employer had actual notice of the injury on the date it occurred, as evidenced by defendant-employer's own written incident report. Under these circumstances, plaintiff had no reason to believe she had to follow-up with a written report of injury. Plaintiff has offered reasonable excuse for failing to give written notice of the injury within 30 days. Defendants offered no evidence that might tend to show that they were prejudiced by plaintiff's failure to file a written report within thirty days of the injury.

Ms. Locklear testified that, on the date of the injury, Ms. Chavis's father notified her of Ms. Chavis's accident and injury. Ms. Locklear is

TLC Home Health Care's scheduling supervisor. This is competent evidence to support the full Commission's finding that on the date of the injury, TLC Home Health Care had actual notice of Ms. Chavis's accident and injury. Actual notice by the employer has been previously held by this Court to be a reasonable excuse for not giving written notice within thirty days. *See, e.g., Davis v. Taylor-Wilkes Helicopter Serv.*, 145 N.C. App. 1, 11, 549 S.E.2d 580, 586 (2001) (employee's failure to provide written notice within thirty days did not bar his claim when his employer had actual notice of the injuries on the date they occurred).

Section 97-22 of the North Carolina General Statutes also requires that the full Commission be satisfied that the employer has not been prejudiced by the delay in written notification. N.C. Gen. Stat. § 97-22; *Lakey*, 155 N.C. App. at 173, 573 S.E.2d at 706 ("Possible prejudice occurs where the employer is not able to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury and where the employer is unable to sufficiently investigate the incident causing the injury."). The burden is on the employer to show prejudice. *Peagler*, 138 N.C. App. at 604, 532 S.E.2d at 214; *Jones*, 103 N.C. App. at 76, 404 S.E.2d at 167.

Here, the full Commission found that TLC Home Health Care had actual notice of Ms. Chavis's accident on the day it occurred. The full Commission found also that TLC Home Health Care "offered no evidence that might tend to show that they were prejudiced" by any delay in written notification. Although TLC Home Health Care now argues it was prejudiced because it was unable to direct Ms. Chavis's medical treatment, it did not argue this to the full Commission. Also, TLC Home Health Care fails to assert how it was prejudiced by Ms. Chavis seeking medical treatment from her own doctor. We find competent evidence to support the full Commission's finding that TLC Home Health Care had actual knowledge of Ms. Chavis's injury and was not prejudiced by any delay in written notification. *See Lakey*, 155 N.C. App. at 173, 573 S.E.2d at 706 (the defendants failed to assert how they were prejudiced by a delay in written notification).

[6] Finally, TLC Home Health Care argues that the full Commission erred by erroneously excluding evidence of Ms. Locklear's testimony regarding TLC Home Health Care's policies. Determining credibility of witnesses is the responsibility of the full Commission, not this Court. *Adams*, 349 N.C. at 681, 509 S.E.2d at 413. This Court does not re-weigh the evidence. *Id*, 509 S.E.2d at 414 Furthermore, "the

Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. We find this argument to be without merit.

Affirmed.

Judge McCULLOUGH concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

The majority's opinion holds Ms. Chavis's "accident occurred in the course of her employment making her injury compensable." Ms. Chavis was not at work or "on-duty" and was completing a personal errand when the accident occurred. Also, this single car accident occurred after Ms. Chavis "blacked out," an idiopathic condition that was the sole cause of the accident. Ms. Chavis's injury did not "arise out of" her employment. I respectfully dissent.

## I. Standard of Review

The standard of review of an appeal from a decision by the Commission is well-established. "In reviewing an order and award of the Industrial Commission in a case involving workmens['] compensation, [an appellate court] is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Moore v. Federal Express*, 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004) (citation omitted). "As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 472, 570 S.E.2d 121, 124 (2002) (citation omitted).

However, "the Industrial Commission's conclusions of law are reviewable *de novo*." *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003) (citing *Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 468 S.E.2d 269 (1996)). Under *de novo* review, the appellate court "considers the matter anew and freely substitutes its own judgment for the agency's judgment." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citation omitted).

## II. "Arising Out of and in the Course of" Employment

This Court has held that an employee who is injured in an accident while on a personal errand does not have a compensable claim. *Bowser v. N.C. Dep't of Corr.*, 147 N.C. App. 308, 311, 555 S.E.2d 618, 621 (2001), *disc. rev. denied*, 355 N.C. 283, 560 S.E.2d 796 (2002) (A traveling employee whose lodging and meals are provided by the employer at a specific location without reimbursement for meals taken at a different location is not within the course and scope of her employment while going to or returning from a meal taken at that different location.) Ms. Chavis's injuries that occurred during a purely personal errand to deliver her father's wallet to him did not "arise out of" or occur "in the course of" her employment.

TLC Home Care argues and the majority's opinion agrees a plaintiff must prove her injury occurred under both conditions of "arising out of" and "in the course of" employment to receive workers' compensation. *See Ross v. Young Supply Co.*, 71 N.C. App. 532, 536-37, 322 S.E.2d 648, 652 (1984).

> The words 'arising out of' refers to the origin or cause of the accident. The employee must be about his masters' business. *Taylor v. Wake Forest*, 228 N.C. 346, 45 S.E. 387 (1947). The words 'in the course of' refer to the time and place and circumstances under which an accident occurred. The accident must occur during the period and place of employment. *Plemmons v. White's Service*, 213 N.C. 148, 195 S.E. 370 (1938).

*Id.*

Here, Ms. Chavis was engaged in a purely personal errand to "drop off her father's wallet," was not at work, and was "off-duty" when her accident occurred. The accident did not occur while Ms. Chavis was at work or while she was on the employer's premises. Ms. Chavis was off-duty and on a purely personal errand at the time and place the accident occurred.

## III. Compensability

### A. "Going and Coming" Rule

Under the "going and coming" rule, accidents which occur while an employee travels to and from work generally do not arise out of or in the course of employment. *Royster v. Culp, Inc.*, 343 N.C. 279, 281, 470 S.E.2d 30, 31 (1996). The injury is not compensable unless the injured employee proves her injury occurred by showing one of the

exceptions to the "going and coming" rule, *i.e.* "traveling salesman," "contractual duty," "special errand," and "dual purpose." *Dunn v. Marconi Communications, Inc.*, 161 N.C. App. 606, 611, 589 S.E.2d 150, 154 (2003).

Generally, the employee must be injured while at work or on the employer's premises to receive workers' compensation. *Hunt v. Tender Loving Care Home Care Agency, Inc.*, 153 N.C. App. 266, 269, 569 S.E.2d 675, 678, *disc. rev. denied*, 356 N.C. 436, 572 S.E.2d 784 (2002); *see also Stanley v. Burns Int'l Sec. Servs.*, 161 N.C. App. 722, 725, 589 S.E.2d 176, 178 (2003) (citing *Ellis v. Service Co., Inc.*, 240 N.C. 453, 456, 82 S.E.2d 419, 421 (1954)) ("An employee is not engaged in the business of the employer while driving his or her personal vehicle to the place of work or while leaving the place of employment to return home."). In *Stanley*, "[t]he [employee] was driving her own vehicle at the time of the accident, and her employer did not pay [her] for travel time to and from work or reimburse her for mileage[, and] . . . the [employee] was no longer on the employer's premises." 161 N.C. App. at 725, 589 S.E.2d at 178. There, we held the employee was subject to the "going and coming" rule and affirmed the Commission's denial of compensation. Here, Ms. Chavis has also failed to show she falls within any exception to the "going and coming" rule. *See Royster*, 343 N.C. at 281, 470 S.E.2d at 31. Exceptions to the "going and coming" rule do not allow compensate for injuries that occur while an employee is engaged in purely personal errands.

## B. "Traveling Salesman"

The "traveling salesman" exception allows compensation for injuries to employees "whose work requires travel away from the employer's premises are within the course of their employment *continuously* during such travel, except when there is a distinct departure for a personal errand." *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 528, 477 S.E.2d 678, 679 (1996), *disc. rev. denied*, 345 N.C. 751, 485 S.E.2d 49 (1997); *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 179, 123 S.E.2d 608, 611 (1962). In *Jacobs v. Sara Lee Corp.*, an employee fell and injured his knee on an employer-sponsored trip while coming from a baseball game not included on his employee itinerary. 157 N.C. App. 105, 106-07, 577 S.E.2d 696, 698 (2003). "The Commission concluded as a matter of law, 'plaintiff's injury while on a deviation to a baseball game is not compensable. Plaintiff had not ended his personal deviation when he was injured leaving the ballpark.' " *Id.*

This Court has also held, "employees with no definite time and place of employment, . . . are within the course of their employment when making a journey to perform a service on behalf of their employer." *Creel v. Town of Dover*, 126 N.C. App. 547, 556-57, 486 S.E.2d 478, 483 (1997); *see also Hunt*, 153 N.C. App. at 270, 569 S.E.2d at 678. ("The applicability of the 'traveling salesman' rule to the facts at bar depends upon the determination of whether plaintiff had fixed job hours and a fixed job location.").

The majority's opinion holds Ms. Chavis has proven she is entitled to compensation under the "traveling salesman" exception simply because she was required to travel "continuously" throughout the day to different patients. Their opinion also asserts Ms. Chavis had no "fixed" place of employment.

Ms. Chavis has failed to prove she is entitled to compensation under the "traveling salesman" exception for several reasons. Ms. Chavis was not on an overnight trip as is usually required by this exception. *See Jacobs*, 157 N.C. App. at 106-07, 577 S.E.2d at 698. While Ms. Chavis did not have one fixed place of employment, she did have fixed hours of employment. She was not compensated for time when she was not on duty. An employee must simultaneously have no definite place of work *and* no definite hours to be considered a traveling employee. *Hunt*, 153 N.C. App. at 270, 569 S.E.2d at 678. Here, Ms. Chavis was "off-duty" and was engaged in a personal errand while "off-duty" for her personal gain. *See Bowser*, 147 N.C. App. at 311, 555 S.E.2d at 621 (A traveling employee was denied compensation when on a personal errand to lunch.). Ms. Chavis failed to call her employer for a new assignment when her patient left the house. Although Ms. Chavis was told not to remain in the patient's house, nothing required her to leave the patient's premises, particularly where the patient would be gone for only "20 minutes."

## C. "Contractual Duty"

"The 'contractual duty' exception states that 'injuries received by an employee while traveling to or from his place of employment are usually not covered . . . unless the employer furnishes the means of transportation as an incident of the contract of employment.' " *Dunn*, 161 N.C. App. at 612, 589 S.E.2d at 155 (quoting *Strickland v. King and Sellers v. King*, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977)). Even where the employer provides transportation to the employee, if the employee is on a personal errand neither the accident nor injury is compensable. In *Dunn*, an employee's injuries from a car accident

were found not to be compensable by the Commission, even though he drove a company car and claimed he was going home for the sole intent and purpose of retrieving his employer's equipment for a job site. 161 N.C. App. at 613, 589 S.E.2d at 155.

Like any other employee who commutes to work at personal expense, Ms. Chavis was required by TLC Home Care to provide her own reliable transportation to maintain employment. Additionally, " '[i]f the transportation is provided permissively, gratuitously, or as an accommodation, the employee is not within the course of employment while in transit.' " *Hunt*, 153 N.C. App. at 270, 569 S.E.2d at 679 (citing *Robertson v. Construction Co.*, 44 N.C. App. 335, 337, 261 S.E.2d 16, 18 (1979)).

TLC Home Care assigned error to the Commission's finding of fact number four: "[P]laintiff was reimbursed for mileage incurred from her home to the first patient, from one patient's home to the next, and then from her last patient to her home at the end of the day." The transcript shows and Ms. Chavis admitted that during the week of her accident, "the rule applicable to [her] at TLC was that [she was] not reimbursed from [her] home to [her] first client." Ms. Chavis did not seek reimbursement for mileage from TLC Home Care from her home to her first patient on her reimbursement slip for the day of the accident. TLC Home Care did not substitute mileage reimbursement for wages, but gave Ms. Chavis a mileage reimbursement in addition to her wage for travel *between patients*, not travel from Ms. Chavis's home to her first patient. Ms. Chavis never sought reimbursement or was paid mileage reimbursement from her home to her first patient. The Commission's conclusion of law number four is unsupported by competent evidence.

### D. "Special Errand" and "Dual Purpose"

Ms. Chavis is not eligible for compensation under the remaining exceptions to the "going and coming" rule. The "special errand" exception allows an employee to recover for injuries sustained while traveling to or from work if the injuries occur while the employee is engaged in a special duty or errand for his employer. *See Schmoyer v. Church of Jesus Christ of Latter Day Saints*, 81 N.C. App. 140, 142, 343 S.E.2d 551, 553, *disc. rev. denied*, 318 N.C. 417, 349 S.E.2d 600 (1986); *Felton v. Hospital Guild*, 57 N.C. App. 33, 34, 291 S.E.2d 158, 159, *aff'd by an equally divided court*, 307 N.C. 121, 296 S.E.2d 297 (1982); *Dunn*, 161 N.C. App. at 612, 589 S.E.2d at 155.

In *Dunn*, the "dual purpose" exception is defined as follows:

"When a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey."

161 N.C. App. at 612-13, 589 S.E.2d at 155 (quoting *Felton*, 57 N.C. App. at 37, 291 S.E.2d at 161 (quotation omitted)).

Ms. Chavis was not on a "special errand" for her employer, nor was she on an out-of-town business trip for a "dual purpose." She was not on an errand for a patient, but purely for her personal benefit. Since Ms. Chavis has never made an overnight trip for her employer and was not being paid or traveling to her next patient, the employer received no benefit from her personal errand. The "special errand" and the "dual purpose" exceptions are inapplicable.

## IV. Idiopathic Condition

The facts are undisputed and the majority's opinion acknowledges, "While driving back to Ms. Galegos's house, Ms. Chavis blacked out and ran her car off the road into the side of a church sustaining injuries to her right foot." TLC Home Care argues Ms. Chavis's accident did not "arise out of" her employment because the accident was solely caused by her idiopathic condition. I agree. " 'Arising out of the employment' refers to the origin or cause of the accidental injury." *Roberts v. Burlington Industries*, 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988). Sustaining injuries from a single car accident after Ms. Chavis "blacked out" was a risk that she was equally exposed to and was not due to her employment. "[A] contributing proximate cause of the injury must be a *risk* inherent or incidental to the employment, and must be one to which the employee would not have been equally exposed apart from the employment." *Culpepper v. Fairfield Sapphire Valley*, 93 N.C. App. 242, 248, 377 S.E.2d 777, 781, *aff'd*, 325 N.C. 702, 386 S.E.2d 174 (1989) (citing *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 404, 233 S.E.2d 529, 533 (1977)). "[T]he causative danger must be peculiar to the work and not com-

mon to the neighborhood." *Gallimore*, 292 N.C. at 404, 233 S.E.2d at 532. Ms. Chavis's injuries are not compensable on these facts.

TLC Home Care also argues that Ms. Chavis's single car accident was caused when she "blacked out," an idiopathic condition and not from any increased travel risk. Again, I agree. "[W]here the accident and resultant injury arise out of both the idiopathic condition of the workman and hazards incident to the employment, the employer is liable. But not so where the idiopathic condition is the *sole cause* of the injury." *Vause v. Equipment Co.*, 233 N.C. 88, 92-93, 63 S.E.2d 173, 176 (1951) (emphasis supplied).

Ms. Chavis testified, "[t]he only thing I remember was I was fixing to hit the side of the road. I know I was going around a curve, the next thing I know I was hitting the side of the church. That's the only thing I can remember." Ms. Chavis testified she experienced a blackout. The majority's opinion asserts, "Ms. Chavis's job duties required her to constantly travel in her car, increasing her travel risk." This notion is unsupported by any facts. Ms. Chavis commuted to and from work in her personal vehicle. She was off-duty and engaged in a purely personal errand when the accident occurred. Her risk was no greater than any other commuting employee or where an off-duty employee leaves work to get a meal, go to the bank, or engage in any other personal pursuit where all employees who drive are "equally exposed apart from the employment." *Culpepper*, 93 N.C. App. at 248, 377 S.E.2d at 781. Ms. Chavis's injuries were caused solely by an accident as a result of her blackout, which the Commission acknowledged was an "idiopathic condition." The Commission's opinion and award should be reversed.

## V. Conclusion

Nothing in these facts show Ms. Chavis's injuries "arose out of" or occurred "in the course of" her employment. Her injuries occurred when "going and coming" to work and while she was on a purely personal errand. A distinguishable line exists to "constitute a 'distinct' and 'total' departure on a personal errand" from the normal work routine or route. *Munoz v. Caldwell Memorial Hospital*, 171 N.C. App. 386, 388, 614 S.E.2d 448, 450 (2005). Ms. Chavis was off-duty and returning to her original job site to resume work when the accident occurred. She was not at work or reimbursed for mileage when the accident occurred. The "going and coming" rule precludes compensation and Ms. Chavis has failed to prove she comes within any exception to the rule.

The majority's decision will allow any off-duty employee who is injured while traveling on a purely personal errand to assert a workers' compensation claim. Workers' compensation insurance is not general liability insurance and requires a causal relation of the injury to the employment. *See Bryan v. Church*, 267 N.C. 111, 115, 147 S.E.2d 633, 635 (1966) ("The rule of causal relation is 'the very sheet anchor of the Workmen's Compensation Act,' and has been adhered to in our decisions, and prevents our Act from being a general health and insurance benefit act.") (citation omitted).

The majority's opinion is an unprecedented and unwarranted extension of employers' liability for workers who are injured while not at work and while engaging in a purely personal pursuit. I cannot distinguish the facts here from when an off-duty employee leaves work in their personal vehicle and engages in an activity that has no connection to or benefit for their employer.

Millions of workers leave and return to work daily in their personal vehicles for personal meals, doctor's appointments, banking, and any other personal errands that have no connection to or benefit for their employer. If an accident or injury occurs during these purely personal trips, the coming and going rule applies and no workers' compensation liability accrues to their employer. The cause of Ms. Chavis's injury was solely from a single car accident after she "blacked out." The Commission's opinion and award is erroneous and should be reversed. I respectfully dissent.