***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications, the Opinion and Award of Deputy Commissioner Donovan.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. On all relevant dates, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, defendant-employer employed three or more employees.
3. All parties had been correctly designated, and there are no questions as to misjoinder or non-joinder of parties.
4. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this subject matter.
5. American Insurance was the carrier on the risk for defendant-employer, with Gallagher Bassett Services, Inc. serving as its administrator, on August 16, 2008,
6. Plaintiff's average weekly wage was $1,020.42, yielding a compensation rate of $680.31 per week as of August 16, 2008.
7. If this claim is found to be compensable, defendants' self-funded Sick Leave Plan is entitled to be reimbursed for workers' compensation indemnity benefits plaintiff is entitled to receive during the period of time that plaintiff received benefits from the Sick Leave Plan.
8. Plaintiff returned to work for defendant-employer on May 4, 2009, and is currently working with restrictions at earnings not less that his average weekly wage at the time of the alleged injury.
9. The issue before the Commission is whether plaintiff sustained a compensable injury on August 18, 2008.
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence: *Page 3 
 a. Stipulated Exhibit 1: Industrial Commission Forms
 b. Stipulated Exhibit 2: Medical records
 c. Stipulated Exhibit 3: Letter containing additional stipulations submitted post-hearing
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit 1: Photograph
 b. Plaintiff's Exhibit 2: Photograph
 c. Plaintiff's Exhibit 3: Drawing (for illustrative purposes)
 d. Plaintiff's Exhibit 4: Accident investigation report
 e. Defendants' Exhibit 1: Medical report
 f. Defendants' Exhibit 2: Pages 53 54 of plaintiff's Exhibit 4
 ***********
Based upon all of the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 61 years old and was a high school graduate. Plaintiff has been employed by defendant-employer or the predecessor owners of the facility (Champion International and Blue Ridge Paper Products) for 36 years at its extrusion facility located in Waynesville, North Carolina. The extrusion process performed by defendant-employer involves coating raw stock produced at defendant-employer's paper mill in Canton with liquid polyethylene, which allows it to hold water. The coated paper is thereafter used to create milk cartons and other food packaging materials. *Page 4 
2. Plaintiff's responsibility was to operate and maintain an extruder machine. The extruder machine applies the water-resistant polymer coating to paper as it passes through the machine. At various times throughout the day, changes had to be made to the type of paper running through the machine and the thickness of the polyethylene coating in order to accommodate different customers' orders. When a change order occurs, the extruder operator leads the team in adjusting various parts of the extrusion machine to produce the ordered coated paper.
3. In order to adjust the thickness of the polyethylene coating, the extruder operator steps onto a catwalk that runs through the middle of the extrusion machine. Access to the catwalk is made by stepping onto a metal grate step approximately 10 ¾ inches high, then onto the catwalk.
4. On August 18, 2008, plaintiff received a change order which required him to adjust an extruder blade on the extruder machine to fill an order. To adjust the blade on the extruder machine plaintiff employed both a cast iron die bolt wrench approximately three feet long and weighing six to ten pounds, and a second, smaller adjustable wrench. Plaintiff carried both of these wrenches with him up to and along the catwalk.
5. After executing the change order, plaintiff was returning on the catwalk. Plaintiff was carrying the cast iron die bolt wrench in his right hand, and the smaller adjustable wrench in his left hand. As he stepped from the catwalk down to the metal grate step, his right "ankle gave way." Plaintiff's ankle was not hurt, and he had no warning that it was about to give out. Plaintiff fell from the catwalk step and injured his right shoulder when he landed on the concrete floor with his right arm outstretched. Nothing was in his path as he fell, and he did not come in contact with anything before hitting the floor. *Page 5 
6. Immediately following the incident, a co-worker arrived at the scene and asked plaintiff about his fall. The first-responder at the Waynesville facility instructed plaintiff to go to the medical clinic at defendant-employer's Canton Mill. When plaintiff presented to the medical clinic at the Canton Mill, he again reported that he was walking off the catwalk when his right ankle "gave way", causing him to fall and strike his shoulder on the ground. Plaintiff received conservative treatment and returned to work with restrictions.
7. Plaintiff's supervisor performed a formal accident investigation. The report stated that plaintiff's ankle gave way, causing him to fall to the floor and jam his shoulder. Further, the report noted that no unsafe actions or conditions were determined, but plaintiff's "ankle just gave away." The root cause of the incident was noted as plaintiff's ankle giving way, which caused him to fall.
8. On August 20, 2008, plaintiff contacted defendant-employer and reported that he was still experiencing pain. He was sent to Haywood Regional Medical Center, where he complained of right shoulder pain and right rib pain. Plaintiff was diagnosed with a fracture of his right shoulder and was instructed to use a sling and follow-up with the occupational health department. He was restricted to one-armed work, which defendant-employer was able to accommodate. At his appointment with the occupational health department several days later, he was diagnosed with a fracture of the acromion and was referred to an orthopaedist.
9. Prior to the injury, plaintiff was scheduled to be promoted to the Serviceman position due to his seniority. Therefore, despite being restricted to light duty, plaintiff was able to begin training for the new position and continued to work at the same or greater wages as his pre-injury wages. *Page 6 
10. Defendants denied plaintiff's claim by I.C. Form 61 filed on September 3, 2008, based on the grounds that his injury was caused by an idiopathic condition unrelated to his employment.
11. On September 12, 2008, plaintiff presented to Dr. Christopher Lechner of Carolina Hand Surgery Associates. Dr. Lechner prescribed conservative treatment, ordered an MRI of the right shoulder, instructed plaintiff to wear a sling, and continued his restrictions. The results of the MRI revealed a tear of the supraspinatus tendon, some bursitis, and a possible Hill-Sachs deformity/lesion.
12. Dr. Lechner continued plaintiff's course of conservative treatment and referred him to physical therapy for progressive range of motion treatment. Over the next several months, plaintiff continued to work light duty while training for the Serviceman position, and during follow-up appointments, he reported continued pain with minimal improvement. On December 3, 2008, Dr. Lechner determined that plaintiff was a surgical candidate, and plaintiff elected to proceed with surgery on his right shoulder.
13. On January 13, 2009, Dr. Lechner performed arthroscopic right shoulder surgery, including acromioplasty, excision of the distal clavicle, and abrasion chondroplasty. During surgery, Dr. Lechner concluded that plaintiff had a completely arthritic acromioclavicular joint.
14. After surgery, plaintiff was removed from work and he began receiving sick leave benefits paid by defendant-employer at 100% of his wages, plus normal contributions to his pension fund. Because of plaintiff's length of service with defendant-employer and its predecessors, he was entitled to 100% sick pay pursuant to a plan available only to employees at the Waynesville facility who were working prior to 1984. Plaintiff had accrued over 1,000 hours *Page 7 
of sick leave on the date of surgery and therefore, he received $815.20 per week after he went out of work.
15. On February 25, 2009, Dr. Lechner noted that plaintiff's significant arthritis in the right shoulder was causing ongoing pain, and therefore, he provided an injection and instructed him to slow down his course of physical therapy. The next month plaintiff reported improvement and Dr. Lechner released him to return to work with restrictions, including no climbing on ladders and no work over shoulder height.
16. Plaintiff has reached maximum medical improvement, and Dr. Lechner has maintained the earlier restrictions. Dr. Lechner stated that he would order a functional capacity evaluation before assigning a rating and permanent work restrictions.
17. Dr. Lechner opined that any individual could sustain the same injury that plaintiff experienced if he fell to the floor with his arm in the wrong position. Plaintiff could have sustained exactly the same injury without falling off the steps of the extrusion machine, and had he simply been walking on a level surface when his ankle gave way. Likewise, the fact that plaintiff had a wrench in his hand when he fell did not cause him to suffer any greater injury, and in fact, as explained by Dr. Lechner, the injury could have been worse had plaintiff reached out and tried to catch himself with his hand or arm.
18. The Full Commission finds as fact that the sole cause of plaintiff's fall and the resulting injury to his right shoulder was the idiopathic condition of his ankle. Further, the fact that plaintiff was carrying tools in his hands at the time of the fall did not cause him to fall or to sustain any increased or greater injury when the idiopathic condition of his ankle caused the fall. Likewise, the absence of a handrail on the catwalk stairs did not constitute an increased risk and *Page 8 
did not cause any greater injury to plaintiff. Plaintiff was not exposed to an increased risk unique to his employment that combined with the idiopathic condition to produce his injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Workers' Compensation Act extends coverage only to an "injury by accident arising out of and in the course of the employment[.]" N.C. Gen. Stat. § 97-2(6) (2003). Injury and accident are separate concepts, and there must be an accident which produces the injury before an employee can be awarded compensation.Jackson v. Fayetteville Area Sys. of Transp.,88 N.C. App. 123, 126-27, 362 S.E.2d 569, 571 (1987).
2. Under the Workers' Compensation Act, the phrase "arising out of the employment" refers to the origin or cause of the accidental injury, while the words "in the course of the employment" refer to the time, place, and circumstances under which an accidental injury occurs. Roberts v. Burlington Industries, Inc.,321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988); N.C. Gen. Stat. § 97-2(6). While often interrelated, the concepts "arising out of" and "in the course of" the employment are distinct requirements, and a claimant must establish both to receive compensation. Id.
3. Where the employee's idiopathic condition "is the sole
cause of the injury," the injury does not arise out of the employment." Billings v. General Parts, Inc.,187 N.C. App. 580, 586, 654 S.E.2d 254, 259 (2007). Thus, where the "cause is known and is independent of, unrelated to and apart from the employment, compensation will not be allowed." Cole v.Guilford County, *Page 9 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963); see alsoCrawford v. Central Bonded Warehouse,263 N.C. 826, 140 S.E.2d 548 (1965).
4. The North Carolina Supreme Court has explained that the injury arises out of the employment if a risk to which the employee was exposed because of the nature of the employment was a contributing proximate cause of the injury, and one to which the employee would not have been equally exposed apart from the employment. SeeRoberts, 321 N.C. at 357, 364 S.E.2d at 423; see also Allred v.Allred-Gardner, Inc.,253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960). Where the accident and resultant injury arise out of both an idiopathic condition of the employee and hazards incident to the employment, defendant-employer is liable. Chavis v. TLC Home Health Care,172 N.C. App. 366, 372, 616 S.E.2d 403, 410 (2005).
6. The uncontested evidence of record shows that plaintiff's fall was caused by the idiopathic condition of his ankle. The steps where plaintiff fell were no different than those commonly encountered in locations outside of the workplace and therefore did not constitute an increased risk. Additionally, the medical evidence shows that plaintiff could have sustained the same injury if he had fallen from a standing position without any height, or if he had fallen to the floor with his arm in a different position. Further, plaintiff was not exposed to an increased risk unique to his employment that combined with his idiopathic condition to cause his right shoulder injury. Accordingly, plaintiff has failed to present sufficient evidence to meet his burden to allow a conclusion that he is entitled to benefits under the Act.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER *Page 10 
1. Plaintiff's claim for benefits for workers' compensation benefits for his alleged injury on August 18, 2008 is hereby DENIED.
2. Each party shall bear its own costs.
 ***********
This the 1st day of March 2010.
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER